## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **JASON CANTRELL**, <br><br> *Plaintiff*, <br><br> *v.* <br><br> **KANDICE GARDNER**, individually and in her official capacity, **ANDRE PITTS**, individually and in his official capacity, **JAMAL HUNTER**, individually and in his official capacity, and **THE CITY OF FOREST PARK**, <br><br> *Defendants.* | **Civil Action No.** <br><br><br> **Jury Trial Demanded** |

## VERIFIED COMPLAINT

Plaintiff Jason Cantrell, by and through counsel American Center for Law & Justice, and as for his Complaint against Defendants Kandice Gardner, Andre Pitts, Jamal Hunter, and the City of Forest Park, hereby alleges upon knowledge to himself and based upon information and belief as follows:

## NATURE OF ACTION

1.     This is a civil rights action brought pursuant to 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution, and Georgia law, challenging the City of Forest Park's practice and policy of conditioning sound amplification permission on the absence of any complaints and revoking valid permits, thereby silencing protected speech, all upon the mere request of any dissatisfied listener.

2.      Plaintiff Jason Cantrell is a Christian whose religious conviction compels him to engage in outdoor religious speech near an abortion clinic in Forest Park, Georgia.

3.      In order to engage in that speech, he complied fully with the City's permitting requirements and obtained a valid Sound Amplifying Device Permit ("permit") before speaking, using that permit consistent with its terms.

4.      However, the City of Forest Park included the following restriction on permits issued to Mr. Cantrell: "If complaints are received about noise level, this Permit will become null and Void." (Hereinafter the "Complaint Restriction")

5.      The City of Forest Park has enforced this unconstitutional restriction. In particular, on July 31, 2025, Officer Jamal Hunter of the Forest Park Police Department ("FPPD") cited Mr. Cantrell, despite Mr. Cantrell's possession of a noise permit, because Officer Hunter had received unspecified complaints.

6.      After Mr. Cantrell filed a General Demurrer and Plea in Bar, the City of Forest Park dismissed the citation against Mr. Cantrell on March 4, 2026, after inflicting over seven months of meritless litigation on Mr. Cantrell.

7.      Since that time, Mr. Cantrell continues to be threatened by Forest Park police officers that they will revoke the permit if complaints are received.

8.      The City's practice of subjecting speech to cancellation at any time by mere complaint — a "heckler's veto" without a volume or other neutral, objective criterion— is a violation of Mr. Cantrell's rights to free speech, guaranteed under

the U.S. and Georgia Constitutions, and a violation of Mr. Cantrell's right to freely exercise his religion, guaranteed by the Georgia Religious Freedom Restoration Act as well as the U.S. and Georgia Constitutions, as well as his right to due process.

9.    Mr. Cantrell seeks declaratory and injunctive relief to prevent further violations of his constitutional rights, as well as damages for the harm he has already suffered as a result of Defendants' unconstitutional actions.

## JURISDICTION AND VENUE

10.    This is a civil rights action that raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, as protected by the Civil Rights Act, 42 U.S.C. § 1983.

11.    This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

12.    This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

13.    This action is also brought under the Georgia Constitution and Georgia statutes. Because these ancillary state law claims involve the same parties and arise from the same incident as their federal claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

14.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and all the acts described in this Complaint occurred within this district, specifically in Clayton County, Georgia.

## PARTIES

15.    Plaintiff Jason Cantrell is a pro-life advocate and minister who volunteers his time as a sidewalk missionary.

16.    Defendant Kandice Gardner works in the Planning and Community Development Department of the City of Forest Park. She signed the amplification permits that contain the unconstitutional restriction based on complaints. She is named in her individual and official capacities.

17.    Defendant Lt. Andre Pitts is a member of the FPPD. He participated in the citation of Mr. Cantrell, directing Ofc. Hunter to issue the July 31, 2025, citation. He is named in his individual and official capacities.

18.    Defendant Ofc. Jamal Hunter is a member of the FPPD. He participated in the citation of Mr. Cantrell by issuing the July 31, 2025, citation. He is named in his individual and official capacities.

19.    Defendant City of Forest Park is a municipal corporation duly incorporated under the laws of Georgia.

## STATEMENT OF FACTS

20.    No reasonable law enforcement officer could believe that silencing a speaker solely because bystanders complained about the content of his speech is constitutionally permissible.

### A.  The City of Forest Park Ordinance

21.    On October 5, 2020, the City of Forest Park adopted Ordinance 20-14, which instituted a comprehensive regulation of amplified noise and permitting in the City, contained in Forest Park Ordinance § 11-5-1 et seq.

22.    Ordinance § 11-5-1 prohibits the making of "any loud, raucous or unusual noise which interferes with the comfort, repose and peace of others or which endangers the health or safety of others within the city in such a manner that such noise is plainly audible at a distance of one hundred (100) feet or more from the place where the noise is emanating from."

23.    Ordinance § 11-5-4 further provides that if individuals wish to engage in sound amplification, they must obtain a permit to do so. It provides, "The city shall not withhold a permit so as to deprive any person of his constitutional rights, but shall have the right to control sound and noise emitted in the city for the general health and welfare of its citizens."

### B.  Jason Cantrell's Amplification Permits

24.    Jason Cantrell, who has a conviction to preach the Gospel and speak out against abortions, has dedicated his time to evangelize to mothers seeking

abortions and to engage in political and religious pro-life advocacy at A Preferred Women's Health Center ("PWHC") located at 519 Forest Parkway, Forest Park, GA.

25.    In order to maximize the reach of his protected speech and religious message, Mr. Cantrell applied to the City of Forest Park for a permit to use amplification equipment in connection with his public preaching.

26.    When Mr. Cantrell received his first permit for the use of amplification, it contained limitations on the time and location of amplification use.

27.    The permit also contained the Complaint Restriction, a cancellation term stating: "If complaints are received about noise level, this Permit will become null and Void." A true and accurate copy of this permit is attached to this Complaint as Exhibit A.

28.    Defendant Gardner, as the City official responsible for issuing amplification permits, personally included the unconstitutional Complaint Restriction on each permit she issued to Mr. Cantrell, including the July 2025 permit that was enforced against him.

29.    At the time Defendant Gardner included this Complaint Restriction, the prohibition on heckler's vetoes was clearly established law. Her personal execution of the permit incorporating the complaint condition directly caused the constitutional violation that followed.

30.     The permit Complaint Restriction does not reference any objective noise standard, does not require any measurement of decibel levels, and does not describe what type of complaint, from how many people, or from what sources would trigger revocation.

31.     After receiving his first permit, Mr. Cantrell incorporated the use of amplification in his ministry and continued to apply for and receive permits upon their expiration.

## C. The July 31, 2025, Citation

32.     On June 27, 2025, Mr. Cantrell received a permit to use amplification, similar to all his previous permits, at PWHC, from 8:00 a.m. to 5:00 p.m., for the period of July 1, 2025, to September 30, 2025.

33.     This permit, like the others, contained the Complaint Restriction.

34.     On July 31, 2025, Mr. Cantrell was engaged in his outdoor evangelism at PWHC. Pursuant to his permit, Mr. Cantrell used amplification to share his pro-life religious message.

35.     PWHC, located at 519 Forest Parkway, Forest Park, GA, is situated two miles away from runways at Hartsfield-Jackson Atlanta International Airport and a busy divided parkway. As a result, the facility is subject to significant ambient sound from aircraft, roadway traffic, and other sources.

36.     On that day, Ofc. Hunter approached Mr. Cantrell and asked to see Mr. Cantrell's permit. Mr. Cantrell showed Ofc. Hunter his valid permit. Ofc.

Hunter informed Mr. Cantrell that he had received complaints and that Mr. Cantrell needed to lower his volume.

37.    Mr. Cantrell, not wishing to lower his volume, asked Ofc. Hunter to summon a supervising officer.

38.    Minutes later, Ofc. Hunter again approached Mr. Cantrell with Lt. Pitts, who demanded that Mr. Cantrell produce his permit. Mr. Cantrell complied immediately.

39.    Lt. Pitts then informed Mr. Cantrell that, because complaints had been received, he needed to lower his volume.

40.    Despite holding a valid permit, Mr. Cantrell agreed to lower his volume, though he did so not in the presence of the officers.

41.    Minutes after that, Lt. Pitts approached Mr. Cantrell and directed Ofc. Hunter to issue Mr. Cantrell a Uniform Traffic Citation, Summons, and Accusation, charging Mr. Cantrell with "CO-NOISE VIOLATION," violating Forest Park Ordinance Code 11-1-26.

42.    Mr. Cantrell informed them that he had, in fact, lowered his volume, but the officers refused to acknowledge this since they had not seen it.

43.    After the issuance of the Citation, Ofc. Hunter informed Mr. Cantrell that his Permit was revoked, and Mr. Cantrell could no longer utilize amplification until the expiration date of the Permit, September 30, 2025.

44. This citation was given erroneously, as Ordinance Code 11-1-26 had been repealed.

45. On November 12, 2025, Mr. Cantrell appeared, with counsel, at the Forest Park Municipal Court, entered a plea of "not guilty," and was given a trial date of March 4, 2026.

46. Before trial, counsel for Mr. Cantrell filed a Plea in Bar arguing that the prosecution of Mr. Cantrell on the basis of the unconstitutional cancellation of his amplification permit violated his rights under the U.S. and Georgia Constitutions, as well as the Georgia Religious Freedom Restoration Act.

47. Before trial, counsel for Mr. Cantrell filed a General Demurrer, arguing that the Ordinance under which Mr. Cantrell had been charged, Forest Park Ordinance Code 11-1-26, had been repealed nearly five years before Mr. Cantrell's citation, by Forest Park Ordinance 20-14.

48. On March 4, 2026, Mr. Cantrell and counsel arrived at the Forest Park Municipal Court prepared to defend his motions, but the solicitor announced that the City of Forest Park was dismissing the citation.

49. The meritless prosecution caused Mr. Cantrell significant distress, reputational harm, and the expenditure of time and resources over more than seven months.

50. The City voluntarily dismissed the citation against Mr. Cantrell. This dismissal did not compensate Mr. Cantrell for the constitutional injuries already

suffered, did not expunge any record of the citation, and did not prevent the same conduct from recurring.

**D. Ongoing Threats and Chilling**

51.     The permits issued by Forest Park since the cancellation and citation on July 31, 2025, contain the same Complaint Restriction.

52.     During and since the litigation in municipal court, Forest Park police officers, including Defendants Hunter and Pitts, have continued to threaten Mr. Cantrell with enforcement of the Complaint Restriction during his time preaching at the PWHC, telling him that his valid amplification permit will be revoked and he will face citation if any complaints are received about his speech, regardless of volume or compliance with other permit terms.

53.     Mr. Cantrell has been ordered to lower his volume on October 23, 2025, November 13, 2025, November 20, 2025, December 10, 2025, and most recently on March 11, 2026.

54.     This ongoing practice has chilled Mr. Cantrell's exercise of his Free Speech rights, forcing him to self-censor or reduce the effectiveness of his ministry by limiting amplification, out of fear of renewed meritless enforcement.

55.     Since March 4, 2026, Mr. Cantrell has continued to engage in outdoor evangelism at PWHC and intends to continue doing so. He has applied for a

renewed Sound Amplifying Device Permit for each three month period, and intends to continue doing so.

56. The City has not amended, withdrawn, or revised the Complaint Restriction from its standard permit form. Absent injunctive relief, any future permit issued to Mr. Cantrell will contain the identical complaint condition — subjecting him to the same threat of complaint-based silencing and citation.

57. The City's policy and practice — conditioning permit validity on the absence of complaints — lacks any objective, content-neutral criterion (such as decibel limits or measurable disturbance) and instead grants dissatisfied listeners unfettered power to veto protected speech, constituting an impermissible heckler's veto.

58. The Complaint Restriction appears on the face of a City-issued, City-signed permit. It is not the act of a rogue officer — it is the written, official product of the City's Planning and Community Development Department, signed by Defendant Gardner in her official capacity.

59. Mr. Cantrell received multiple permits over multiple permit periods, each containing the identical complaint condition. This was a consistent, repeated City practice applied systematically to at least this speaker, and presumably to all permit applicants.

60. The complaint condition was enforced not by a line officer acting on his own initiative, but by supervisory FPPD personnel — Lt. Pitts — demonstrating

that enforcement of the Complaint Restriction was itself a departmental policy, not an aberrant individual act.

## COUNT I
### Deprivation of the Freedom of Speech - 42 U.S.C. § 1983

61.     Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

62.     The First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees freedom of speech and prohibits laws or government actions that abridge free expression.

63.     The use of amplification equipment constitutes protected speech under the First Amendment.

64.     Defendants, acting under color of state law, deprived Plaintiff of his right to freedom of speech and expression secured by the First and Fourteenth Amendments to the United States Constitution.

65.     The government may not silence a speaker merely because listeners object to or are offended by his speech.

66.     The City's policy of including and enforcing Complaint Restriction ("If complaints are received about noise level, this Permit will become null and Void") is facially invalid as an impermissible heckler's veto.

67.     It expressly conditions the exercise of First Amendment rights on the absence of listener complaints, with no objective standard, no decibel threshold, and no content-neutral basis for enforcement.

68.     It is not a reasonable, content-neutral time, place, or manner restriction because it turns on listener reaction rather than objective standards.

69.     As applied to Plaintiff, the policy and its enforcement (including the July 31, 2025, citation and ongoing threats) punished and chilled protected religious and pro-life speech based on listener opposition, without any compelling justification or narrow tailoring.

70.     Defendants acted pursuant to an official City policy, practice, and custom of enforcing the complaint condition as written, and the individual Defendant officers carried out that policy.

71.     Defendants Gardner (by issuing permits with the Complaint Restriction), Hunter and Pitts (by enforcing the same), and the City (by maintaining the policy) are liable under § 1983. The City is liable under *Monell v. Department of Social Services* because the policy represents official municipal custom and practice, as shown through numerous permits.

72.     The complaint condition provides no objective standard, no decibel threshold, no requirement for complaints from any defined category of persons, no minimum number of complaints, and no procedural safeguards. It vests

unbridled discretion in City officials — and effectively in any single objecting bystander — to silence protected speech.

73.    Content-based restrictions on speech are presumptively unconstitutional and may be upheld only if the government demonstrates that they are narrowly tailored to serve a compelling governmental interest.

74.    Mr. Cantrell's pro-life religious speech was targeted precisely because of its content and the reaction it provoked among those who disagreed with it. The subject matter of the speech — pro-life advocacy from a religious, moral, and political perspective at an abortion clinic — is the specific reason complaints were generated.

75.    The absence of any objective noise violation is further demonstrated by the physical context of Mr. Cantrell's speech. PWHC sits adjacent to an airport flight path and a major commercial roadway that generates considerable and constant ambient noise.

76.    Defendants made no effort to measure whether Mr. Cantrell's amplification exceeded background noise levels, obtained no decibel reading, and applied no objective standard.

77.    Lt. Sparks expressly confirmed that complaints, not any measurable noise threshold, were the sole basis for enforcement. This confirms that the complaint condition, as enforced, was not a neutral noise regulation but a mechanism for silencing speech that provoked listener disagreement.

78.     The City has no compelling interest, and certainly no narrowly tailored means, to silence Mr. Cantrell's speech based solely on listener displeasure.

79.     As a direct and proximate result of Defendants' actions, Plaintiff suffered the suppression of his protected speech, the chilling of his future expressive activities, and associated damages.

## COUNT II
### Deprivation of Free Exercise of Religion - 42 U.S.C. § 1983

80.     Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

81.     The First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, protects the free exercise of religion.

82.     Mr. Cantrell's street evangelism and amplified religious preaching constitute a sincere and central exercise of his religious beliefs. His religious conviction compels him to preach publicly about the sanctity of life and to counsel women against abortion.

83.     Defendants, acting under color of state law, substantially burdened Plaintiff's sincere religious exercise (public evangelism and ministry against abortion) through the Complaint Restriction, which conditions and threatens

revocation of his amplification permit on listener complaints, and by prosecuting him without merit.

84.    This burden is not justified by a compelling governmental interest nor is it narrowly tailored, violating the First and Fourteenth Amendments.

85.    The complaint condition in Mr. Cantrell's permit, and Defendants' enforcement thereof, constituted a substantial burden on his religious exercise by conditioning his ability to proclaim his religious message upon the absence of complaints from listeners who disagreed with or were offended by that message.

86.    The complaint condition is not neutral on its face, as it operates to silence speech based on the reaction of listeners, which is inherently tied to the content and viewpoint of the speech.

87.    There is no legitimate governmental interest served by conditioning the exercise of religious speech on the absence of listener complaints, absent any objective noise standard.

88.    Defendants' citation of Mr. Cantrell for exercising his religious speech constitutes a direct suppression of his free exercise of religion.

89.    As a direct and proximate result of Defendants' actions, Plaintiff suffered the chilling of his free exercise rights, disruption of his religious mission, the indignity and burden of a criminal citation, and associated emotional distress, loss of time, and attorneys' fees.

## COUNT III
### Deprivation of Freedom of Speech - Ga. Const., Art. I, § I, Par. V

90.     Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

91.     Article I, Section I, Paragraph V of the Georgia Constitution of 1983 guarantees "free speech."

92.     The Supreme Court of Georgia has held that the Georgia Constitution's protection of free speech is broader in scope than the First Amendment's and that it provides independent protection against restrictions on expression.

93.     Defendants' actions violate this provision for the same reasons they violate the First Amendment in Count I, including the heckler's veto inherent in the Complaint Restriction.

## COUNT IV
### Violation of the Georgia RFRA – Ga. Code § 50-15A-1 *et seq.*

94.     Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

95.     The Georgia Religious Freedom Restoration Act prohibits government from substantially burdening a person's exercise of religion unless it demonstrates the burden furthers a compelling governmental interest and uses the least restrictive means.

96.     Defendants' Complaint Restriction policy and its enforcement substantially burden Plaintiff's religious exercise without meeting this strict scrutiny standard.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that the Court:

(a) Enter a declaratory judgment declaring that the Complaint Restriction in the Sound Amplifying Device Permit — conditioning the exercise of amplified speech upon the absence of listener complaints, without any objective noise standard — violates the First and Fourteenth Amendments to the United States Constitution;

(b) Enter judgment on Counts I–IV in favor of Plaintiff and against Defendants and award damages;

(c) Preliminarily and Permanently Enjoin Defendants from enforcing the Complaint Restriction, revoking permits on that basis, or threatening such revocation;

(d) Award Plaintiff costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable law; and

(e) Award Plaintiff such other, further, and additional relief as this Court deems just and appropriate.

## DEMAND FOR JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands that all claims in this action be tried to a jury.

Respectfully submitted this 26th day of March 2026,

Andrew J. Ekonomou
Georgia Bar No. 242750
AMERICAN CENTER FOR LAW & JUSTICE
3286 Northside Parkway
Suite 1007
Atlanta, Georgia 30327
aekonomou@outlook.com

Liam R. Harrell*
D.C. Bar No. 1740309
Nathan J. Moelker*
Va. Bar No. 98313
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
(202) 546-8890 (phone)
(202) 546-9309 (fax)
lharrell@aclj.org
nmoelker@aclj.org
* *Pro hac vice* applications forthcoming

## <u>VERIFICATION PURSUANT TO 28 U.S.C. § 1746</u>

Pursuant to 28 U.S.C. § 1746, I, Jason Cantrell, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, and that the facts contained therein are true and correct.

Executed on: March 26, 2026

By: /s/ Jason Cantrell