**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JASON CANTRELL,<br><br>Plaintiff,<br><br>vs.<br><br>KANDICE GARDNER, individually and in her official capacity;<br>ANDRE PITTS, individually and in his official capacity;<br>JAMAL HUNTER, individually and in his official capacity; and<br>THE CITY OF FOREST PARK,<br><br>Defendants. | CIV. ACTION NO. 1:26-CV-01638<br><br>The Honorable Eleanor L. Ross<br><br>**JURY TRIAL DEMANDED** |

---

**DEFENDANTS' OPPOSITION**
**TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

---

COME NOW Defendants Kandice Gardner ("Gardner"), Andre Pitts ("Officer Pitts"), Jamal Hunter ("Officer Hunter"), and the City of Forest Park ("City" or "Forest Park") (*collectively*, "Defendants") and oppose, pursuant to Federal Rule of Civil Procedure ("Federal Rule") 65, Plaintiff Jason Cantrell's ("Plaintiff" or "Cantrell") Motion for Preliminary Injunction ("Motion for Injunction"). Although the City has repeatedly granted Plaintiff's requests for use of amplification devices to engage in First Amendment activities at a healthcare

Page 1 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

facility, when law enforcement simply requested that Plaintiff lower the volume consistent with City's interest/goal in public health, safety, and welfare, Plaintiff stubbornly refused before defiantly increasing the volume when the officers were leaving the scene. Nevertheless, the City has continued to permit First Amendment activities outside of the subject healthcare facility. Indeed, the City's actions speak volumes as to the respect and compliance with the First Amendment's protections. Despite Plaintiff's mistaken belief, this case does not involve a Heckler's Veto and is a far cry from a curtailment of First Amendment rights. Specifically, the Court should deny the Motion for Injunction because, *inter alia*, Plaintiff cannot establish a First Amendment violation even under the most stringent inapplicable scrutiny, the citation was dismissed without penalty, and any inconvenience is vastly outweighed by the public interest in regulating noise outside a medical facility. For these and the reasons further articulated, *infra*, Defendants respectfully request that the Court deny the instant motion pursuant to Federal Rule 65 and the governing authority, as well as afford any other relief that is just and proper under the circumstances.

## I. BACKGROUND

1.

Under Forest Park Code of Ordinances §§ 11-5-1, *et seq.*, it shall be unlawful for any person to make or cause to be made any loud, raucous, or unusual noise

Page 2 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

which interferes with the comfort, repose, and peace of others or which endangers the health or safety of others within the City in such a manner that such noise is plainly audible at a distance of one hundred (100) feet or more from the place where the noise originates ("Noise Ordinance").  Forest Park, Ga., Mun. Code. § 11-5-1.[1] However, persons may operate a sound amplification device for the purpose of, *inter alia*, exercising the right of free speech guaranteed by the United States Constitution after receiving a permit from the City—operation without a permit is unlawful.  Id. § 11-5-4(1).  Although the City shall not withhold a permit to deprive any person of Constitutional rights, the City "shall have the right to control sound and noise emitted in the [C]ity for the general health and welfare of its citizens."  Id. § 11-5-4(3).  Any person who violates the Noise Ordinance shall, after conviction in the City Municipal Court, be guilty of a misdemeanor.  Id. § 1-1-8.

2.

Continuing on June 24, 2025, Plaintiff sent the City e-mails, requesting a permit to utilize a sound amplification device in the City ("First Request").[2]  (Ex. B,

---

[1] Attached hereto, and expressly incorporated herein, as Exhibit A is a certified copy of the Noise Ordinance.

[2] At the preliminary injunction stage, courts may rely hearsay and other material which would not be admissible for a permanent injunction if the evidence is appropriate given the character and

Page 3 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

Request).[3]  Rather than complete the form as instructed by Gardner, (Ex. C, E-mail),[4] on June 25, 2025, Plaintiff complained about the application requirement and sent another e-mail, requesting a permit ("Second Request").  (Ex. D, Second Request).[5] Subsequently, Plaintiff submitted the Request for Permit to Utilize Sound Amplification ("Request Form").  (Ex. E, Request Form).[6]

3.

On or about June 26, 2025, Chief Criss instructed Plaintiff to retrieve the approved permit from the City.  (Ex. F, June Approval).[7]

---

objections of the proceeding.  Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995).

[3] Attached hereto, and expressly incorporated herein, as Exhibit B is a true and correct copy of the First Request.

[4] Attached hereto, and expressly incorporated herein, as Exhibit C is a true and correct copy of Gardner's June 25, 2025, e-mail.

[5] Attached hereto, and expressly incorporated herein, as Exhibit D is a true and correct copy of the Second Request.

[6] Attached hereto, and expressly incorporated herein, as Exhibit E is a true and correct copy of the Request Form.

[7] Attached hereto, and expressly incorporated herein, as Exhibit F is a true and correct copy of the June Approval.

Page 4 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

4.

Gardner issued, on June 27, 2025, a Sound Amplifying Device Permit ("June Permit"), permitting Plaintiff to utilize a sound amplification device from 8:00AM until 5:00PM from July 1, 2025, through September 30, 2025, at 519 Forest Parkway, Forest Park, Georgia 30297 ("Health Center"). (Ex. G, June Permit).[8]

5.

On July 31, 2025, Officer Hunter was working off-duty at the Health Center. (Ex. H, Report).[9] When Officer Hunter requested that Plaintiff lower the volume of an amplification device consistent with the City Code (not cessation of First Amendment activities), Plaintiff became hostile and demanded to speak with a supervisor. (Id.). Once Officer Pitts arrived at the Health Center, Plaintiff stubbornly refused to lower the volume of the amplification device and, thus, Officer Pitts issued a warning to Plaintiff. (Id.). When Plaintiff again defiantly increased the volume as the Officers were leaving the scene, (id.), Officer Hunter issued

---

[8] Attached hereto, and expressly incorporated herein, as Exhibit G is a true and correct copy of the June Permit.

[9] Attached hereto, and expressly incorporated herein, as Exhibit H is a true and correct copy of the Incident/Investigation Report.

Page 5 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

Plaintiff a citation for violating the City Code.  (Ex. I, Citation).[10]  Other than the citation, the City took no additional action concerning the incident at the Health Center.  (Ex. H, Report).

6.

At the direction of the solicitor on March 4, 2026, the Municipal Court dismissed the citation without the imposition of any fines, fees, or other penalties upon Plaintiff.  (Ex. J, *Nolle Prosequi*).[11]

7.

After more applications, Chief Criss again instructed Plaintiff to retrieve sound amplification permits, subject to the City Code's noise regulation in furtherance of public safety, health, and welfare goals/interests, from the City.  (Ex. K, October and December Approvals).[12]  On October 2 and December 30, 2025, Gardner issued the Sound Amplifying Device Permits ("October and December Permits"), permitting Plaintiff to utilize a sound amplification device for certain

---

[10] Attached hereto, and expressly incorporated herein, as Exhibit I is a true and correct copy of the Citation.

[11] Attached hereto, and expressly incorporated herein, as Exhibit J is a true and correct copy of the *Nolle Prosequi*.

[12] Attached hereto, and expressly incorporated herein, as Exhibit K is a true and correct copy of the October and December Approvals.

Page 6 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

periods at the Health Center.  (Ex. L, October and December Permits).[13]  Despite the

citation, the City continues to permit Plaintiff to engage in First Amendment

activities consistent with the City Code's regulations in furtherance of public safety,

health, and welfare goals/interests at the Health Center.  Indeed, after Plaintiff visited

the City in April 2026, the City again approved, subject to the City Code's

regulations in furtherance of public safety, health, and welfare goals/interests,

Plaintiff's request to utilize a sound amplification device at the Health Center from

April 8 through July 8, 2026.  (Ex. M, April Approval and Permit).[14]

## II.  ARGUMENT AND CITATION TO AUTHORITY

Plaintiff argues that the Court should enjoin any regulation on the use of

amplification devices in the City because such regulation effectively creates an

unconstitutional Heckler's Veto and the relative equities favor injunctive relief.

(Doc. no. 2, Mot. for Inj., pp. 4-16).  However, the City has lawfully sought to ensure

public safety, health, and welfare unrelated to the suppression of any speech.

Although district courts may issue preliminary injunctions, Fed. R. Civ. P. 65, the

---

[13] Attached hereto, and expressly incorporated herein, as Exhibit L is a true and correct copy of the October and December Permits.

[14] Attached hereto, and expressly incorporated herein, as Exhibit M is a true and correct copy of April 2026 Approval and Permit.

Page 7 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

purpose of a preliminary injunction is to preserve the parties' positions until the court can hold a trial on the merits.  Bloedorn v. Grube, 631 F.3d 1218, 1229 (11th Cir. 2011); Sierra Club v. Atlanta Reg'l Comm'n, 171 F. Supp. 2d 1349, 1358 (N.D. Ga. 2001).   Generally, courts may only grant injunctive relief if the movant demonstrates:  (1) a substantial likelihood of success on the merits; (2) irreparable injury in the absence of an injunction; (3) the threatened injury outweighs damage resulting from the injunction; and (4) the injunction is not adverse to the public interest.  Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000); Agilysys, Inc. v. Hall, 258 F. Supp. 3d 1331, 1357 (N.D. Ga. 2017).   Ultimately, a preliminary injunction is an "extraordinary and drastic remedy" that should not be granted unless the movant clearly establishes the burden of persuasion as to the prerequisites. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1231 (11th Cir. 2005); Diamond Power Int'l, Inc. v. Clyde Bergemann, Inc., 370 F. Supp. 2d 1339, 1345 (N.D. Ga. 2005).  Despite assertions, this case does not present a Heckler's Veto vis-à-vis Plaintiff's First Amendment rights.

As an initial matter, Jackson v. Cowan, No. 19-13181, 2022 WL 3973705 (11th Cir. Sept. 1, 2022) (per curiam) is instructive concerning the so-called Heckler's Veto.  In Jackson, the plaintiff who preached in public spaces was arrested for simple battery of a student, who was part of a counter-protest over multiple days

Page 8 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

at a designated free expression area on a university campus.  Id. at **1-2. Addressing the First Amendment claim, the Eleventh Circuit explained, "A heckler's veto occurs when unpopular speakers are convicted upon evidence which show[s] no more than that the opinions which they were peaceably expressing were sufficiently opposed to the views of the majority of the community to attract a crowd and necessitate police protection." Id. at *8 (internal citation and quotation omitted). In such cases, "police ordered unpopular, but peaceful, protestors to disperse because they were concerned that counter-protestors were about to become violent"—when refusing to disperse, the protestors were arrested. Id. "The heckler's veto principle prohibits police from arresting peaceful protesters, or ordering them to disperse, in acquiescence to unruly counter protesters." Id.  Because the plaintiff was never ordered to disperse and the arrest was based upon physical contact (not mere speech or expression of ideas), there was no unlawful Heckler's Veto. Id.

Like Jackson, this is not a Heckler's Veto case despite Plaintiff's mistaken belief.  Here, the Officers did not order Plaintiff (or any other persons) to disperse. Indeed, there was no counter-protest to Plaintiff's First Amendment activities. Rather, when Plaintiff refused to adjust the volume in accordance with City Code, the Officers issued a warning.  Only after Plaintiff stubbornly increased the volume as the Officers were leaving the scene, a citation was issued.  However, Plaintiff was

Page 9 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

not arrested in response to the public's reaction to unpopular speech, and the citation was ultimately dismissed without the imposition of any fees, fine, or other penalties. Assuming, *arguendo*, the language on the subject permit could *arguably* be considered a facial Heckler's Veto (the City makes no such admission), Plaintiff was cited when law enforcement observed (Officer Hunter was an off-duty officer at the Health Center) the use of an amplification device in violation of the City Code and Plaintiff refused to lower the volume for the health, safety, and general welfare of the citizens of Forest Park as prescribed in the Code. Indeed, the City acted based upon noise/volume in furtherance of health, safety, and general welfare without regard to the content or nature of Plaintiff's speech. Put simply, this is not a Heckler's Veto case.

Nevertheless, Plaintiff cites Reed v. Gilbert, 576 U.S. 155, 135 S. Ct. 2218 (2014) for the proposition that this matter involves an unlawful Heckler's Veto because the City's approach invites viewpoint-based censorship—opponents can *purportedly* silence Plaintiff by lodging complaints while neutral/supportive listeners would not. (Doc. no. 2, Mot. for Inj., p. 10). Putting aside the fact that Reed involved a sign ordinance at the summary judgment stage and makes no reference to a Heckler's Veto, the Supreme Court explained that government regulation of speech is content-based if the law applies to particular speech because

Page 10 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

of the discussed topic, idea, or message expressed—courts must consider whether the regulation facially distinguishes based on the message. Reed, 576 U.S. at 163-64. Although the regulation of speech based on a specific ideology, opinion, or perspective is a more blatant or egregious form of content discrimination, First Amendment hostility toward content-based regulation extends to the prohibition of public discussion of an entire topic, *e.g.*, a regulation banning devices for only political speech is content-based even when imposing no limits on viewpoints. Id. at 168-69. Ultimately, although the code's distinctions were not speaker-based, the code did not permit signage within a period leading up to an election and, thus, the restriction was content-based falling within strict scrutiny. Id. at 169-71. Like Reed, the City has not engaged in any speaker-based regulation. Rather, the City lawfully and uniformly regulates, regardless of the content or viewpoint, the volume of all sounds in furtherance of public health, safety, and welfare goals/interests. And, unlike Reed where regulation was election-based, the City has not entirely banned speech within a set period leading up to an event with an eye toward influencing the outcome of said event. Rather, the City has merely sought to regulate the time, place, and manner (use of amplification devices consistent with the general health, safety, and welfare of citizens without regard to content). Simply put, Reed is inapposite and does not warrant classifying this matter as a heckler's veto case.

Page 11 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

**A.      The City Has Not Run Afoul of Plaintiff's First Amendment Rights**

Turning to the injunction prerequisites, Plaintiff first argues a likelihood of success on the merits because this Heckler's Veto case cannot survive First Amendment strict scrutiny.  (Doc. no. 2, Mot. for Inj., pp. 6-13).  However, as discussed, *supra*, this is not a heckler's veto case and strict scrutiny is inapplicable to this case.  That said, although the substantial likelihood of success on the merits is generally the most important factor, the failure to establish this factor obviates the need to consider the other factors and the failure to satisfy the other factors is fatal to an injunction even when this factor is established.  Baker v. Atlanta, 164 F.4th 850, 864 (11th Cir. 2026); CCA & B, LLC v. F ± W Media Inc., 819 F. Supp. 2d 1310, 1318 (N.D. Ga. 2011).  With this basic principle in mind, the lack of a First Amendment violation defeats the instant motion.

Nevertheless, Plaintiff argues that the alleged content-based restriction in this matter involves a "public forum" that fails to comport with "strict scrutiny."  (Doc. no. 2, Mot. for Inj., pp. 6-8).  In a traditional public forum which grants general access to the designated class, like a sidewalk, governments may impose reasonable time, place, and manner restrictions on private speech, but content-based restrictions must satisfy strict scrutiny, and those based on viewpoint are prohibited.  Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc., 942 F.3d 1215, 1236–37

Page 12 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

(11th Cir. 2019).   Reasonable content-neutral restrictions on the time, place, or manner of speech are constitutional if the regulations are justified without reference to the content of the speech, are narrowly tailored to serve a significant government interest, and leave alternative channels open for the communication of information, *i.e.*, intermediate scrutiny.  Lexra, Inc. v. Deerfield Beach, Fla., 593 Fed. Appx. 860, 864 (11th Cir. 2014).   Conversely, content-based regulations fall under strict scrutiny, requiring the government to establish that the restriction is narrowly tailored to achieve a compelling interest.  One World One Fam. Now v. Miami Beach, 175 F.3d 1282, 1286 (11th Cir. 1999).

To determine whether a regulation passes First Amendment scrutiny, the Court must first decide whether said regulation is content-neutral or content-based. In this regard, Plaintiff reasserts the mistaken Heckler's Veto argument and further argues that the provision of the permit concerning complaints transforms the City's classic time, place, and manner regulation into a content-based restriction.  (Doc. no. 2, pp. 8-11).  However, as previously discussed, Reed is unavailing and establishes that the City's actions were content-neutral.  Nonetheless, Plaintiff submits that, in the absence of a specific noise-threshold, *e.g.*, volume or decibel measure, the City's regulation is, *ipso facto*, content-based.  But, this too is false and Plaintiff has cited no authority for this proposition.   Although noise ordinances based on decibel

Page 13 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

limitations might be more precise, such objective limitations are not necessary to comport with the First Amendment.  Sharkey's, Inc. v. Waukesha, 265 F. Supp. 2d 984, 995 (E.D. Wis. 2003).  Moreover, as in this case when sound amplification restrictions apply during certain periods to all devices and locations regardless of the message/speech, there is no differential treatment based on content.  Harbourside Place, LLC v. Jupiter, Fla., 958 F.3d 1308, 1317 (11th Cir. 2020); see also Turner Broad. Sys., Inc. v. F.C.C., 512 U.S. 622, 639, 114 S. Ct. 2445 (1994) (explaining that the physical characteristics of a transmission should be ignored when determining the constitutionality of regulations affecting speech).  Simply put, as the City merely sought to regulate the noise/volume without regard to the message or nature of the speech, strict scrutiny is inapplicable.

Because the challenged regulation is content-neutral, this matter is governed by intermediate scrutiny.  In this regard, the regulation must be narrowly tailored to further a substantial governmental interest unrelated to the suppression of speech.  Computer & Commc'ns Indus. Ass'n v. Uthmeier, No. 25-11881, 2025 WL 3458571, at *5 (11th Cir. Nov. 25, 2025).  Without question, the City's regulation comports with intermediate scrutiny.

DA Mortg., Inc. v. Miami Beach, 486 F.3d 1254 (11th Cir. 2007) is instructive concerning whether noise regulations run afoul of intermediate scrutiny in First

Page 14 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

Amendment cases.  In <u>DA Mortg.</u>, the club owner and sublessor challenged the county noise ordinance, which prohibited, *inter alia*, operation of sound devices at a "louder volume than is necessary for convenient hearing," enforced by the city after being cited for "excessive noise."  <u>Id.</u> at 1258, 1263-64.  Addressing whether the noise regulation was a permissible time, place, and manner restriction, the Eleventh Circuit explained that governments have a substantial interest in protecting citizens from unwelcome noise and that governments may act to protect traditional public fora such as streets from excessive noise.  <u>Id.</u> at 1267.  Concerning tailoring, governments need not show that the regulation uses the least-restrictive means of achieving the government interest if the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation. <u>Id.</u>  Because the code addressed, *inter alia*, excessive noise from devices that reproduce sounds, it proscribed unreasonably loud noise in terms that addressed the needs and welfare of all listeners.  <u>Id.</u> at 1267-68.  As such, the regulation was narrowly tailored.  <u>Id.</u> at 1268.  Addressing the alternative channels prong, the Eleventh Circuit explained that, because the regulation did not impose a total ban, but rather only restricted the volume so as not to intrude on the peace and quiet of the community, the regulation conformed to the First Amendment.  <u>Id.</u> at 1268-69; <u>see also</u> <u>Pine v. W. Palm Beach, FL</u>, 762 F.3d 1262, 1272–74 (11th Cir. 2014)

Page 15 of 26
<u>Cantrell v. City of Forest Park, *et al.*</u>, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

(affirming denial of motion for preliminary injunction barring enforcement of noise ordinance banning amplified noises near health care clinics).

Here, the City's regulation is equally constitutional. Akin to DA Mortg., the City sought to regulate excessive noise from amplification devices to address the health and welfare of citizens in the public forum. And, because the City has not sought to impose a total ban, but merely limit the volume to avoid intrusions on the peace and tranquility of the public, the City has not run afoul of the First Amendment. Again, the City has repeatedly and continuously permitted Plaintiff to utilize amplification devices at the Health Center. Ultimately, the City has not prevented or limited Plaintiff's ability to engage in First Amendment activities, but rather, simply regulated to the excessive volume of Plaintiff's speech for the safety, health, and general welfare its citizens. The City has not prevented Plaintiff from First Amendment activities.

Yet, Plaintiff cites Ward v. Rock Against Racism, 491 U.S. 781, 109 S. Ct. 2746 (1989) for the proposition that the City has failed to satisfy intermediate scrutiny. (Doc. no. 2, Mot. for Inj., p. 13). However, even where the standards are flexible and officials can exercise considerable discretion, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." Id. at 795. Although retaining ultimate control, the city

Page 16 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

deferred to the sponsor's desires concerning sound quality and excessive noise.  Id.

Finally, because cities can protect public fora and there is a substantial interest in

protecting citizens from unwelcome noise, where the city merely seeks to control

volume without interfering with the speech, the regulation is narrowly tailored.  Id.

at 796-802.  Again, although Plaintiff *apparently* desires perfect clarity/guidance

concerning enforcement of the City Code, the First Amendment does not impose

that requirement.  Sharkey's, Inc., 265 F. Supp. 2d at 995.  And, because the

regulation arose from public noise and not content, Ward supports the conclusion

that the City has not violated the First Amendment.

Even if the Court determines that strict scrutiny applies (Defendants make no

such admission), Plaintiff still cannot demonstrate a substantial likelihood of success

on the merits.  To survive strict scrutiny, the regulation must be narrowly tailored to

serve a compelling government interest.  Reno v. Flores, 507 U.S. 292, 302, 113 S.

Ct. 1439 (1993).  Although conceding that the City has a compelling interest in

public peace, preventing unreasonable noise, and minimizing disruption in public

spaces, Plaintiff argues that the *purported* complaint-based mechanism is not

narrowly tailored.  (Doc. no. 2, Mot. for Inj., pp. 11-13).  But, narrow tailoring

requires employment of the least restrictive alternative to further the interest.  In re

Georgia Senate Bill 202, 622 F. Supp. 3d 1312, 1333 (N.D. Ga. 2022).  Although

Page 17 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

demanding, strict scrutiny is possible to satisfy—narrow tailoring is not synonymous with "perfect" tailoring and, thus, courts often consider whether the law is overinclusive, whether the law is underinclusive, and the availability of less restrictive alternatives. VoteAmerica v. Raffensperger, 800 F. Supp. 3d 1349, 1372 (N.D. Ga. 2025).

Here, the challenged noise regulation does not encompass more protected speech than necessary to achieve the goals/interests of public safety, health, and welfare, the prevention of unreasonable noise, and minimization of disruptions in public spaces. First, neither the City Ordinance nor the permit sweeps too broadly fringing further on First Amendment rights than is necessary to advance the compelling interest. Indeed, as the City addresses concerns regarding volume/noise without banning First Amendment expression (Plaintiff's speech was not prohibited), the challenged regulation is not overinclusive. Second, although the City is not required to address all problems in a single regulation in furtherance of health, safety, and welfare, the City has not left other similar conduct that also threatens the health and general welfare unregulated. Like noise, the City regulates signage to protect and promote the health, safety, and welfare of the City while requiring permits. Forest Park Mun. Code. §§ 8-3-2(1) and 8-3-6. Third, the City cannot employ less restrictive alternatives that would be at least as effective in

Page 18 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

achieving the legitimate purpose safety and general welfare.  Although a decibel restriction may be more precise, restrictiveness and effectiveness would then depend on the chosen decibel limitation.  Indeed, a very low limit might restrict substantially more expression than required to serve the City's interests without considering the circumstances—noise that might be tolerable at some times and in some locations might not be at other times and places.  Moreover, individuals could easily escape such regulations by simply lowering the volume in the presence of law enforcement and resuming disruptive activities outside the presence of law enforcement.  Ultimately, the City is objectively regulating noise while permitting exceptions to the extent there is no public disturbance.

**B.    Plaintiff Will Not Suffer Irreparable Injury Without an Injunction**

Assuming, *arguendo*, the Court believes there is a substantial likelihood of success on the merits, Plaintiff erroneously argues that the loss of any First Amendment freedom constitutes irreparable injury.  (Doc. no. 2, Mot. for Inj., pp. 13-14).  However, the assertion of First Amendment rights does not require, *ipso facto*, a finding of irreparable injury warranting a preliminary injunction—direct penalization as opposed to incidental inhibition of First Amendment rights constitutes irreparable harm.  Siegel, 234 F.3d at 1178.  Where no policy or disciplinary action "directly penalized" any First Amendment right, there is no

Page 19 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

irreparable harm.  <u>Tampa Bay Students for a Democratic Soc'y v. Univ. of S. Fla.</u>, No. 8:25-CV-02752-SDM-AAS, 2026 WL 76406, at \*\*21-22 (M.D. Fla. Jan. 9, 2026) (concluding the lack of irreparable harm, where the student organization was placed on probation, suspended, and expelled after placing flyers in unapproved locations and engaging in demonstrations).

Like the plaintiff in <u>Tampa Bay Students</u>, Plaintiff cannot establish irreparable harm.  Although cited, Plaintiff was not detained, arrested, or forcibly removed from the area.  And, the citation was ultimately dismissed.[15]  As such, Plaintiff cannot point to any City policy or action that "directly penalized" any First Amendment right.  Even after the citation, the City has repeatedly issued Plaintiff permits to engage in public speech at the Health Center.  To this day, the City permits Plaintiff to utilize sound amplification devices when engaging in First Amendment activities at the Health Center.  Therefore, Plaintiff cannot establish irreparable harm.

Nevertheless, Plaintiff mistakenly relies upon <u>Cate v. Oldham</u>, 707 F.2d 1176, 1188 (11th Cir. 1983), *certified question answered*, 450 So. 2d 224 (Fla. 1984), for

---

[15] Generally, governments recover criminal penalties from an individual in a criminal prosecution and civil penalties in a civil proceeding.  <u>Creel v. Comm'r</u>, 419 F.3d 1135, 1140 (11th Cir. 2005). When determining whether a criminal penalty exists, courts look at the <u>Kennedy</u> factors.  <u>United States v. Alcocer Roa</u>, 753 Fed. Appx. 846, 849–50 (11th Cir. 2018).  As the citation was dismissed and Plaintiff received no sanction, it cannot be said that the City penalized Plaintiff.

Page 20 of 26
<u>Cantrell v. City of Forest Park, *et al.*</u>, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

the proposition that the *potential* revocation of his permit and the citation constitute irreparable harm. (Doc. no. 2, Mot. for Inj., p. 14). However, the City has repeatedly issued Plaintiff amplification permits, the citation was ultimately dismissed without any penalty, and Plaintiff currently possesses an amplification permit. Unlike Cate which involved the barring of the malicious prosecution action, this matter involves a noise regulation in furtherance of public health, safety, and welfare. Moreover, the City has not retaliated against Plaintiff based upon the exercise of First Amendment rights. Indeed, the City has repeatedly granted Plaintiff's requests for permits. Therefore, Plaintiff cannot establish irreparable injury.

**C.    The Balance of Harms and Public Interest Disfavor an Injunction**

Finally, Plaintiff argues that, based upon the enforcement of a *purportedly* unconstitutional ordinance, the balance of harms and public interest prongs favor an injunction. Correctly, Plaintiff asserts that, where the government opposes the preliminary injunction, "its interest and harm—the third and fourth elements— merge with the public interest." Fla. v. Dep't of Health & Hum. Servs., 19 F.4th 1271, 1293 (11th Cir. 2021) (concluding that an injunction barring enforcement of a government rule would harm public interest). However, Plaintiff otherwise relies upon inapplicable authority while missing the mark on both prongs.

Page 21 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

First, Plaintiff argues that the City cannot claim any harm from being enjoined from an unconstitutional restriction.  (Doc. no. 2, Mot. for Inj., pp. 14-15).  However, this case does not present a Heckler's Veto and, regardless of the language on the permit, Plaintiff was cited based upon law enforcement's observation of a noise violation and Plaintiff's refusal to reduce the volume consistent with the City Code.  Indeed, noise regulations are constitutional and cities have a substantial/compelling interest in protecting citizens and areas surrounding healthcare facilities from unwelcome noise because patients entering facilities are in vulnerable/emotional conditions and noise adversely affects medical procedures/recoveries.  Pine, 762 F.3d at 1269.  Likewise, cities have a substantial, compelling, and legitimate interest in controlling traffic, as well as ensuring the convenience and safety of citizens.  Nationalist Movement v. Cumming, Ga., 92 F.3d 1135, 1139 (11th Cir. 1996).  Without question, the City's regulation of noise outside the Health Center and other businesses adjacent to traffic is constitutional.  Nevertheless, Plaintiff mistakenly cites KH Outdoor, LLC v. Trussville, 458 F.3d 1261 (2006) for the proposition that the public has no interest in the enforcement of a Heckler's Veto.  Notwithstanding the fact that this matter does not present a Heckler's Veto and KH Outdoor involved a sign ordinance, Defendants have made no distinction between speech.  Rather, the City merely seeks to balance public health, safety, and welfare against amplified

Page 22 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

First Amendment expressions.  Simply put, damage from the sought-after injunction drastically outweighs the non-existent harm to Plaintiff, who continues to engage in First Amendment actives at the Health Center to this day.

Second, Plaintiff argues that the City has no interest in the enforcement of an unconstitutional ordinance.  (Doc. no. 2, Mot. for Inj., pp. 14-16).  However, noise regulations serve a legitimate public interest.  See Stone v. Maitland, 446 F.2d 83, 87 (5th Cir. 1971) (explaining that cities have a legitimate interest in, *inter alia*, lessening noise levels).[16]  Indeed, where an ordinance ameliorates the negative effects of public conduct, said ordinance serves the public interest.  LaCroix v. Fort Myers Beach, Fla., 38 F.4th 941, 955 (11th Cir. 2022).  Here, the City Code and permitting requirements serve the public interest of ameliorating the negative effects of amplified sound in/around traffic, public spaces, as well as healthcare facilities and other businesses.  Moreover, the City has not completely banned speech or use of amplification devices in the City and, thus, this matter does not involve enforcement of an unconstitutional ordinance.  cf. id. (concluding that the ordinance banning portable signs in the city constituted an unconstitutional ordinance that did

---

[16] The Eleventh Circuit has adopted as binding precedent all decisions issued by the former Fifth Circuit before October 1, 1981.  Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

Page 23 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

not serve the public interest). And, as previously discussed, the public has a heightened interest in regulating noise surrounding medical facilities. Although a city has no interest in the enforcement of an unconstitutional ordinance, the Noise Ordinance is constitutional and the City has not engaged in the unlawful restriction of First Amendment rights. Simply put, the public interest prong disfavors issuance of an injunction.

### III.  CONCLUSION

When all is said and done, the City merely seeks to protect public health, safety, and welfare while permitting citizens to engage in First Amendment activities. Indeed, the continued permitting of sound amplification devices at the Health Center speaks volumes of the City's desire and effort to balance First Amendment concerns against the legitimate, significant, and compelling interest in public health, safety, and welfare which are at a premium outside of healthcare facilities. For the reasons stated, *supra*, Defendants respectfully request that the Court deny the Motion for Injunction pursuant to Federal Rule 65.

*[SIGNATURE ON THE FOLLOWING PAGE]*

Page 24 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

Respectfully submitted, this 17th day of April, 2026.

DENMARK ASHBY MATRICARDI LLC

_____

DANIELLE M. MATRICARDI
Georgia Bar No. 259551
CHANDARALEN PHE
Georgia Bar No. 686706
T. ORLANDO PEARSON
Georgia Bar No. 180406
100 Hartsfield Center Parkway, Suite 400
Atlanta, Georgia 30354
Phone:  (770) 478-9950
Email:  dmatricardi@dam.law
Email:  cphe@dam.law
Email:  tpearson@dam.law

*Counsel for Defendants Kandice Gardner, Andre Pitts, Jamal Hunter, and The City of Forest Park*

Page 25 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JASON CANTRELL,<br><br>Plaintiff,<br><br>vs.<br><br>KANDICE GARDNER, individually and in her official capacity;<br>ANDRE PITTS, individually and in his official capacity;<br>JAMAL HUNTER, individually and in his official capacity; and<br>THE CITY OF FOREST PARK,<br><br>Defendants. | CIV. ACTION NO. 1:26-CV-01638<br><br>The Honorable Eleanor L. Ross<br><br>**JURY TRIAL DEMANDED** |

## LOCAL RULE CERTIFICATION

The undersigned certifies that this document has been prepared in accordance with Local Rule 5.1 and that the ***Opposition to Plaintiff's Motion for Preliminary Injunction*** has been filed using the CM/ECF system, which will notify the attorney(s) of record.

Respectfully submitted, this 17th day of April, 2026.

DENMARK ASHBY MATRICARDI LLC

T. ORLANDO PEARSON
Georgia Bar No. 180406

Page 26 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction

# EXHIBIT A



## CITY OF
# FORESTPARK

**Vanessa Holiday, CMC**
City Clerk
745 Forest Parkway
Forest Park, GA 30297
Phone:

April 16, 2026

To Whom It May Concern:

I, Vanessa Holiday, City Clerk for the City of Forest Park, Georgia, certify that I am the keeper of said city's seal, minutes and records, and that the attached document is a true and accurate copy of the City of Forest Park Municipal Code of Ordinances Title 11, Chapter 5 – Noise (Sections 11.5.1 through 11.5.4).

I have hereunto affixed my official signature and the corporate seal of the City of Forest Park, Georgia this 16th day of April 2026.

Respectfully,

**Vanessa Holiday**
City Clerk
City of Forest Park



CITY HALL • 745 FOREST PARKWAY, FOREST PARK, GA 30297
WWW.FORESTPARKGA.ORG

Sec. 11-5-1. - General prohibition.

It shall be unlawful for any person to make or cause to be made any loud, raucous or unusual noise which interferes with the comfort, repose and peace of others or which endangers the health or safety of others within the city in such a manner that such noise is plainly audible at a distance of one hundred (100) feet or more from the place where the noise is emanating from. Such noises as contemplated by this section shall include but not be limited to:

(1) The sounding of any horn, whistle, claxon, siren, audible signal device, bell or other similar device when such sound is not made in connection with a necessary alert, emergency situation or traffic warning;

(2) The discharge into open air of the exhaust of any steam engine, stationary internal-combustion engine, diesel engine, boat motor, motor vehicle, truck, motorcycle, motorbike, motor scooter, go-cart, or other vehicle except through a muffler or other device which will effectively prevent loud or explosive noises therefrom;

(3) The operation of a radio, phonograph or television at a volume which carries the sound beyond the boundaries of the premises on which the same is operated;

(4) Yelling, shouting, hooting, whistling or singing (except in places of worship);

(5) The keeping of any animal or fowl which makes a frequent or continuing sound;

(6) The use of any musical instrument or drums;

(7) The use of or operation of any mechanical device, blower, hydraulic device, machine or equipment;

(8) The erection, demolition, alteration or repair of buildings between the hours of 10:00 p.m. and 7:00 a.m.;

(9) The operation of grading or excavation equipment between the hours of 10:00 p.m. and 7:00 a.m.;

(10) The shouting, crying, ringing of bells or other sounds made or caused to be made by peddlers, hawkers and vendors;

(11) The dragging or hauling of any object which creates noise;

(12) Loud, unnecessary, unusual, or excessive noise between the hours of 10:00 p.m. and 7:00 a.m. in a residential area that disturbs the peace or quiet of any neighborhood or which causes discomfort or annoyance to any reasonable person of a normal sensitiveness residing in the area.

(Ord. No. 23-04, § 1(Exh. A), 6-20-2023; Ord. No. 24-07, § 1, 10-7-2024)

Sec. 11-5-2. - Solid waste collection.

It shall be unlawful for any person within any residential area, or within a radius of five hundred (500) feet therefrom, to load, unload, open or otherwise move about or handle boxes, crates, containers, garbage containers or other objects between the hours of 10:00 p.m. and 7:00 a.m. in such a manner that a reasonable person of normal sensitiveness residing in the residential area is caused discomfort, annoyance and denial of the reasonable use of property;

(Ord. No. 23-04, § 1(Exh. A), 6-20-2023)

Sec. 11-5-3. - Vehicle noise.

It shall be unlawful for any person within any residential area, or within a radius of five hundred (500) feet therefrom, to operate, run up or test any motor vehicle, truck tractor or machinery engine between the hours of 10:00 p.m. and 7:00 a.m. and which creates a noise of such a high level or of such a duration that a reasonable person of normal sensitiveness residing in the residential area is caused discomfort, annoyance and denial of the reasonable use of property. This subsection shall not apply to any vehicle being operated on an authorized place, street, road or highway in a manner not inconsistent with other noise ordinances or laws.

(Ord. No. 23-04, § 1(Exh. A), 6-20-2023)

**Editor's note—** Ord. No. 23-04, § § 1(Exh. A), adopted June 20, 2023, set out provisions intended for use as § 11-5-2. Inasmuch as there were already provisions so designated, said section has been codified herein as § 11-5-3 at the discretion of the editor.

Sec. 11-5-4. - Sound amplification devices.

Nothing in this chapter 5 shall be construed to prohibit the operation of a sound amplification device, whether stationary or attached to a vehicle, provided the same is operated under the terms and conditions as follows:

(1) Should any person desire permission to operate a sound amplification device for the purpose of advertising, soliciting, attracting attention, announcing a sporting event, or exercising the right of free speech as guaranteed by the United States Constitution, he shall be allowed to do so only after he has applied for and received a permit from the city; and such operation without such permit is declared unlawful.

(2) An application for a permit to operate a sound amplification device shall be in writing, filed with the city, and shall set forth the equipment to be used, the place or route to be followed, the intensity of sound level expected, the purpose of such use and the days and hours such use is desired.

(3)

The city shall consider such application at its earliest convenience and shall exercise its discretion after considering all pertinent facts. The city may require the applicant to demonstrate the equipment before issuing the permit. The city shall not withhold a permit so as to deprive any person of his constitutional rights, but shall have the right to control sound and noise emitted in the city for the general health and welfare of its citizens. Each permit issued shall be issued for a specific term.

(Ord. No. 23-04, § 1(Exh. A), 6-20-2023)

**Editor's note—** Ord. No. 23-04, § § 1(Exh. A), adopted June 20, 2023, set out provisions intended for use as § 11-5-2. Inasmuch as there were already provisions so designated, said section has been codified herein as § 11-5-4 at the discretion of the editor.

# EXHIBIT B

**From:** Jason C ▓▓▓▓▓▓▓▓▓▓▓▓▓
**Sent:** Tuesday, June 24, 2025 1:10 PM
**To:** Guadalupe Caballeros ▓▓▓▓▓▓▓▓▓▓▓▓▓
**Subject:** Sound Permit

> CAUTION: This email originated from outside of the organization. Please use caution when interacting with this email.

## REQUEST FOR PERMIT TO UTILIZE SOUND AMPLIFICATION

**Name of Applicant:**    Jason Cantrell

**Type of Function:**    Evangelism, Freedom of Speech (Reference: McCullen v. Coakley, 2013)

**Specific Purpose of Use:** Preaching the Gospel of Jesus Christ

**Address:**    Public Sidewalks at 519 Forest Pkwy, Forest Park, GA

**Hours of Function:**    Monday through Saturday, from 7:00 AM until 6:00 PM.

**Type of Amplifier Used:**    Brand: Roland
Model: Street Cube Ex
Color:    Black
Peak Power Output: 50 Watts

**Intensity of sound level expected:** Volume sufficient to be heard over the cars driving on Forest Parkway.

**Person in control of sound amplification:** Jason Cantrell

I am requesting a permit for 3 months beginning when my previous permit expires at the end of June.

Sent from my iPhone

# EXHIBIT C

I did not receive the attached form filled out. I have attached it so you can fill it out and once I receive it back, I will start the process. Also please add the dates on the line of hours of function. Thank you, have a great day.



**Kandice Gardner**
**Financial Services Tech**
**Planning & Community Development**
City of Forest Park
Phone: ███████████
785 Forest Parkway | Forest Park, GA 30297
www.forestparkga.gov |
████████████████



Confidential: Please be advised that the information contained in this email message, including all attached documents or files, is privileged and confidential and is intended only for the use of the individual or individuals addressed. Any other use, dissemination, distribution or copying of this communication is strictly prohibited. If you are not the intended recipient, please delete this message and notify us of incorrect delivery by immediate reply

# EXHIBIT D

privileged and confidential and is intended only
for the use of the individual or individuals
addressed. Any other use, dissemination,
distribution or copying of this communication is
strictly prohibited. If you are not the intended
recipient, please delete this message and notify
us of incorrect delivery by immediate reply

---

**From:** Jason C ███████████████████
**Sent:** Wednesday, June 25, 2025 10:06 AM
**To:** Kandice Gardner ███████████████████
**Subject:** Re: Permit Request

CAUTION: This email originated from outside of the organization. Please use caution when interacting with this email.

You can't take 10 seconds and transfer the information to the form?

Sent from my iPhone

> On Jun 25, 2025, at 10:05 AM, Jason C ████████████████ wrote:

I have sent the information in this way many times and it was accepted. I don't have a way to complete that form through email. I have been getting these permits for 7-8 years. This is ridiculous.

Sent from my iPhone

> On Jun 25, 2025, at 9:48 AM, Kandice Gardner ██████████████████ wrote:

Thank you for your email. Please note that we are unable to accept email submissions in place of the official Sound Permit Application form.

To proceed with your request, kindly complete and submit the required application form. Unfortunately, we will not be able to process or consider your request without the properly completed form. I have attached the form again to this email.

Thank you for your cooperation.

**From:** Jason C ███████████

**Sent:** Tuesday, June 24, 2025 1:10 PM

**To:** Guadalupe Caballeros ████████████████

**Subject:** Sound Permit

CAUTION: This email originated from outside of the organization. Please use caution when interacting with this email.

## REQUEST FOR PERMIT TO UTILIZE SOUND AMPLIFICATION

**Name of Applicant:**        Jason Cantrell

**Type of Function:**        Evangelism, Freedom of Speech (Reference: McCullen v. Coakley, 2013)

**Specific Purpose of Use:** Preaching the Gospel of Jesus Christ

**Address:**        Public Sidewalks at 519 Forest Pkwy, Forest Park, GA

**Hours of Function:**        Monday through Saturday, from 7:00 AM until 6:00 PM.

**Type of Amplifier Used:**  Brand: Roland
Model: Street Cube Ex
Color:  Black
Peak Power Output: 50 Watts

**Intensity of sound level expected:** Volume sufficient to be heard over the cars driving on Forest Parkway.

**Person in control of sound amplification:**  Jason Cantrell

I am requesting a permit for 3 months beginning when my previous permit expires at the end of June.

Sent from my iPhone

# EXHIBIT E



# CITY OF FOREST PARK

Department of Planning & Community Development
785 Forest Parkway
Forest Park, Georgia 30297

## CITY OF FOREST PARK, GEORGIA

### REQUEST FOR PERMIT TO UTILIZE SOUND AMPLIFICATION.

**Name of Applicant:** Jason Cantrell

**Applicant Phone:** ███████  **Applicant Email:** ███████

**Type of Function:** Freedom of Speech

**Specific Purpose of Use:** Preaching the gospel

**Address:** 519 Forest Pkwy,

**Hours of Function:** Monday - Saturday 8:00 AM - 5:00 PM July 1st - September 30th

**Type of Amplifier Used:** Brand: Roland
Model: Street Cube
Color: Black
Peak Power Output: 50 watts

**Intensity of sound level expected:** Loud enough to hear over traffic on Forest Pkwy.

**Person in control of sound amplification:** Jason Cantrell

**** PLEASE SUBMIT WITH COPY OF PICTURE ID****

Approved _____  Denied _____  Official (FPPD) _____

# EXHIBIT F



**Chief Brandon Criss**
Police Services
320 Cash Memorial Blvd.
Forest Park, GA 30297

special event Permit #
1711070008&
ega

CITY OF
FOREST

Date: 6/26/25

To: Jason Cantrell
Re: Request for Sound Amplification Permit


Dear Jason Cantrell,

Your request to utilize sound-amplifying devices at 519 Forest Parkway, Forest Park, Ga, 30297 has been approved. The date granted is 07/01/25-09/30/25, during the event of freedom of speech during the hours of 8:00am-5:00pm. As a reminder, this permit to utilize sound amplifying device will be limited to the regulations outlines in the City Ordinance. You have been informed of the City Ordinances that are attached with this approval and that the sound amplification device must not be used to create disturbance to the peace, health, or safety of others or endanger their comfort within the city limits.

This is just the notice of approval, please come by 785 Forest Parkway, Forest Park, GA 30297 to retrieve requested Sound Amplifying Permit.


Chief Brandon Criss

CITY HALL • 745 FOREST PARKWAY, FOREST PARK, GA 30297
WWW.FORESTPARKGA.ORG

# EXHIBIT G

# SOUND AMPLIFYING DEVICE PERMIT



FOREST

**Issued To: Jason Cantrell**

**Issued Date: 06/27/2025**

**Location: 519 FOREST PARKWAY, FOREST PARK, GA 30297**

**Date: 07/01/2025 - 09/30/2025**

**Time: 08:00am-05:00pm**

If complaints are received about noise level, this Permit will become null and Void.

Kandice Gardner,
Financial Service Tech

6/27/25
Date

# EXHIBIT H

## INCIDENT/INVESTIGATION REPORT

| | |
|---|---|
| **Agency Name** *Forest Park Police Department* | **Case#** *25-005503* |
| **ORI** GA 0310200 | **Date / Time Reported** *07/31/2025 08:45  Thu* |
| | **Last Known Secure** *07/31/2025 08:45  Thu* |
| **Location of Incident** *519 FOREST PKWY Apt. 100, Forest Park GA* **Gang Relat** NO **Premise Type** *Drug Store/doctors* **Beat/Team** B5 | **At Found** *07/31/2025 08:45  Thu* |

**INCIDENT DATA**

| # | Crime Incident(s) | (Com) | Weapon / Tools | | | Activity |
|---|---|---|---|---|---|---|
| #1 | *Co-noise Violation* 11-1-26 | M | Entry | Exit | Security | |
| #2 | Crime Incident | ( ) | Weapon / Tools | | | Activity |
| | | | Entry | Exit | Security | |
| #3 | Crime Incident | ( ) | Weapon / Tools | | | Activity |
| | | | Entry | Exit | Security | |

**MO**

**VICTIM**

# of Victims: 1   Type: SOCIETY   Injury:   Domestic: NO

| | Victim/Business Name (Last, First, Middle) | Victim of Crime # | DOB / Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| V1 | *State Of Georgia* | 1, | | | | | | |

| Home Address | Email | Home Phone |
|---|---|---|
| Employer Name/Address | Business Phone | Mobile Phone |

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|

**OTHERS INVOLVED**

CODES:  V- Victim (Denote V2, V3)   WI = Witness   IO = Involved Other   RP = Reporting Person (if other than victim)

| Type: | | | Injury: | | | | | |
|---|---|---|---|---|---|---|---|---|
| Code | Name (Last, First, Middle) | | Victim of Crime # | DOB / Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
| Home Address | | | | Email | | | | Home Phone |
| Employer Name/Address | | | | | | Business Phone | | Mobile Phone |

| Type: | | | Injury: | | | | | |
|---|---|---|---|---|---|---|---|---|
| Code | Name (Last, First, Middle) | | Victim of Crime # | DOB / Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
| Home Address | | | | Email | | | | Home Phone |
| Employer Name/Address | | | | | | Business Phone | | Mobile Phone |

**PROPERTY**

1 = None   2 = Burned   3 = Counterfeit / Forged   4 = Damaged / Vandalized   5 = Recovered   6 = Seized   7 = Stolen   8 = Unknown
("OJ" = Recovered for Other Jurisdiction)

| VI# | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| Officer/ID# | *HUNTER, J. (UNIF, B) (1609)* | | |
|---|---|---|---|
| Invest ID# *(0)* | | Supervisor | *SPARKS, B. R. (UNIF, A) (1465)* |

| Status | Complainant Signature | Case Status *Released On Copy* 07/31/2025 | Case Disposition: | Page 2 |
|---|---|---|---|---|

# INCIDENT/INVESTIGATION REPORT

*Forest Park Police Department*

Case # *25-005503*

| Status Codes | 1 = None | 2 = Burned | 3 = Counterfeit / Forged | 4 = Damaged / Vandalized | 5 = Recovered | 6 = Seized | 7 = Stolen | 8 = Unknown |
|---|---|---|---|---|---|---|---|---|

|  | IBR | Status | Quantity | Type Measure | Suspected Type | |
|---|---|---|---|---|---|---|
| **D R U G S** |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

Assisting Officers

Suspect Hate / Bias Motivated:

NARRATIVE

## REPORTING OFFICER NARRATIVE

| | | OCA |
|---|---|---|
| Forest Park Police Department | | 25-005503 |
| Victim | Offense | Date / Time Reported |
| Society | CO-NOISE VIOLATION | Thu 07/31/2025 08:45 |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

On 7/31/25 at approximately 0845 hours, I, K9 Cpl. Hunter, was working off-duty at 519 Forest Parkway. The staff contacted me to report a protester outside using a sound amplification device.

I made contact with the protester, identified as Jason Cantrell. I requested that he turn the device down, not off. He became hostile and demanded to speak with a supervisor. I then called Lt. Pitts via radio. Upon his arrival, I handed the scene over to him.

I asked Cantrell if he had a valid written permit from the city. He showed me a permit, which included a note at the bottom stating that the permit becomes null and void upon a noise complaint.

Following Lt. Pitts' instructions, I advised Cantrell to turn down the device. He refused and stated he would not comply. As Lt. Pitts issued a warning to Cantrell and we were walking away, Cantrell turned the device back on at the same volume.

I was then instructed to issue a citation. Cantrell was issued a city ordinance citation for a noise violation. My Body-Worn Camera was active during this interaction.

No further action was taken.

Reporting Officer: HUNTER, J.                    Printed By: DJACKSON. 021424076  04/02/2026 14:22                    Page 4
R_CS3NC

## Incident Report Suspect List

*Forest Park Police Department*

OCA: *25-005503*

| 1 | Name (Last, First, Middle) *CANTRELL, JASON WESLEY* | | | | | Also Known As | | | | | Home Address ███████ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Business Address ████████ | | | | | | | | | | |

| DOB ████ | Age | Race | Sex | Eth | Hgt | Wgt | Hair | Eye | Skin | Driver's License / State ███████ |
|---|---|---|---|---|---|---|---|---|---|---|
| | ████████ | | | | | | | | | |

Scars, Marks, Tattoos, or other distinguishing features

| *Reported Suspect Detail* | Suspect Age | | Race | Sex | Eth | Height | | Weight | | SSN |
|---|---|---|---|---|---|---|---|---|---|---|
| Weapon, Type | Feature | Make | | Model | | Color | | Caliber | Dir of Travel / Mode of Travel | |
| Veh Yr / Make / Model | | Drs | Style | | Color | | Lic Plate / State | | VIN | |

Notes _____    Physical Char _____

# EXHIBIT I

DDS-32 (01/10)

**GEORGIA**
**UNIFORM TRAFFIC CITATION, SUMMONS, AND ACCUSATION**

Case Number **25005503**   NCIC No. **GA0310200**   Citation Number **723080**

**FOREST PARK, GEORGIA - DEPARTMENT OF POLICE SERVICES**
320 Cash Memorial Blvd • Forest Park, GA 30297

Upon Month **July** (Day) **31** (Year) **2025** at **09:03** ☒ AM ☐ PM

Operator License Number **038509590**

License Class and Type **C**   State **GA**   Endorsements _____   Expires _____

Name **CANTRELL**   **JASON**   **WESLEY**
(Last)   (First)   (Middle)

Address ▓▓▓▓▓▓   Phone ▓▓▓▓

City ▓▓▓▓   State ▓   Zip Code ▓▓▓

Business Address ▓▓▓▓   Phone ▓▓▓

DOB ▓▓▓▓▓

Veh. Yr _____   Make _____   Model _____   Color _____

Registration No. _____   Yr. _____   State _____

CDL ☐ YES ☒ NO   ACCIDENT ☐ YES ☒ NO   INJURIES ☐ YES ☒ NO   FATALITIES ☐ YES ☒ NO

☐ 2-LANE ROAD   ☐ DRIVER REQUESTED ACCURACY CHECK   ☐ VASCAR   ☐ LASER   ☐ RADAR

Within the State of Georgia, did commit the following offense   SPEEDING - clocked by ☐ PATROL VEHICLE ☐ OTHER

(Serial # _____   Calibration/Check _____   Lat _____   MPH in a _____ zone

☐ DUI (Test Administered ☐ BLOOD ☐ BREATH ☐ URINE ☐ OTHER )   DUI Test Results _____

TEST ADMINISTERED BY (If Applicable) _____

OFFENSE (other than above) **CO-NOISE VIOLATION**

In Violation of Code Section **11-1-26** of ☐ State Law ☒ Local Ordinance

REMARKS **used sound amplification devices was asked 3 time to turn it**
**down and refused to.**

☐ Companion Case Citation Number _____   Agency Case Number **25-005503**

| WEATHER | (A) ROAD (B) | TRAFFIC | LIGHTING | COMMERCIAL VEHICLE INFORMATION |
|---|---|---|---|---|
| ☒ Clear | ☒ Dry ☐ Concrete | ☒ Light | ☒ Daylight | ☐ 6+ Passenger |
| ☐ Cloudy | ☐ Wet ☒ Blacktop | ☐ Medium | ☐ Darkness | ☐ Commercial Vehicle Violation |
| ☐ Raining | ☐ Ice ☐ Dirt | ☐ Heavy | ☐ Other | ☐ Hazardous Material Violation |
| ☐ Other | ☐ Other ☐ Other | | | |

County of **CLAYTON**   and _____ miles _____ of (city) **FOREST PARK**

or **519** **FOREST PKWY** at or near mile post **100** or within city **FOREST PARK**

at (secondary location) _____

OFFICER (Print) **HUNTER, JAMAL**   Badge # **1609**   Div **UNIF**

You are hereby ordered to appear in Court to answer this charge on the **12** day of **November**

**2025** at **01:00** ☐ AM ☒ PM in the **MUNICIPAL** Court at **320 CASH MEMORIAL BLVD**

City **FOREST PARK** Georgia 30297

**NOTICE:** This citation shall constitute official notice to you that **failure to appear in Court** at the date and time stated on this citation to dispose of the cited charges against you shall cause the designated Court to forward your driver's license number to the Department of Driver Services, and **your driver's license shall be suspended.** (Georgia Code 17-6-11 and 40-5-56) The suspension shall remain in effect until such time as there is a satisfactory disposition in this matter or the Court notifies the Department of Driver Services.

LICENSE DISPLAYED IN LIEU OF BAIL ☒ YES ☐ NO   RELEASED TO **SELF**

SIGNATURE ACKNOWLEDGES SERVICE OF THIS SUMMONS AND RECEIPT OF COPY OF SAME

SIGNATURE *Refused*

**ARRESTING OFFICER'S CERTIFICATION**

The undersigned has just and reasonable grounds to believe, and does believe, that the person named herein has committed the offense set forth, contrary to law.

SIGNATURE _____   Badge # _____

AUTHORIZED AND APPROVED PURSUANT TO
CODE 40-13-1 - D.D.S. REG 375-3-4-01

**COURT COPY**

---

DATE _____   **COURT ACTION AND OTHER ORD**

The within complaint has been examined and there is probable cause for filing the same. Leave is hereby granted file the complaint.

Complaint filed _____

Bail fixed at $ _____   or cash deposit of $ _____

Signature of _____   Signature of person giving bail

Fine in the Amount of $ _____   received as required by court sche

_____
Signature of Clerk

Continuance to _____   Reason _____

Continuance to _____   Reason _____

Warrant Issued _____   Warrant Served _____

Waives Trial by Jury _____

ON ARRAIGNMENT, THE DEFENDANT PLEADS _____

**APPEARANCE, PLEA OF GUILTY AND WAIVER**

I, _____ have been advised that I am being charged w _____ and that the maximum punishment that I can receive _____ months imprisonment and/or a $ _____ fine.

I have been advised of my rights to be represented by counsel and have counsel appointed to represent me if I am indigent, plead not guilty and be tried by a jury or a judge, confront the witnesses against me, and, not give incriminating evidence against myself. I hereby waive these rights, state that I have not been induced by any threat or promise to enter this plea and do freely and voluntarily enter my plea of Guilty.

This _____ day of _____

Accused _____

I, _____ have advised the above-named accused as indicated abo of his/her rights, the nature of the case against him/her and the possible consequences of the plea as entered. I satisfied that there is a factual basis for the guilty plea which the accused has entered, and that it was entered freely an voluntarily with understanding of the nature of the charge and the consequences of the plea.

_____
Jud

**DISPOSITION AND SENTENCE**

Court _____   City _____

Defendant Pleads: ☐ (3) Guilty   ☐ Not Guilty   ☐ (4) Nolo Contd

Trial ☐ Jury   ☐ Court Adjudicated   ☐ (1) Guilty   ☐ Not Guilty

Other Action ☐ (2) Bond Forfeiture   ☐ Nolo Prossed   ☐ No Bill   ☐ No Record

Sentence Amount Fine/Forfeiture $ _____

_____ Days (Months) in jail _____ Traffic School _____ Days (Months) Probation

Other Order _____

Appeal Bond of $ _____   Filed (for _____

Appeal to _____   C

As provided by law, I hereby certify that the information on this ticket is a true abstract of the record of this court or bure in this case

DISPOSITION DATE _____

_____
Signature of Judge or Clerk

# EXHIBIT J

# MUNICIPAL COURT CITY OF FOREST PARK DISPOSITION

| Defendant: Jason Wesley Cantrell | | Case #: 25005503 | | | |
|---|---|---|---|---|---|
| OFFENSE | | CITATION | PLEA | ADJ | Fines and Fees |
| Ct. 1 | 11-1-26    NOISE VIOLATION | T00723080 | | | $145.00 |
| | no Officer nolle prose per City | | | | |
| | | | | Total: | $145.00 |

**Whereas the above stated disposition has been made of the offense(s) against the above named Defendant, it is ordered that:** The defendant is sentenced to confinement in the Clayton County Jail for a period of _____ [ ]days [ ]months on each count

_____ Said sentence to be suspended upon the following conditions: **PAYMENT OF TOTAL FINE.**

_____ Upon service of _____ of said sentence in confinement, the defendant shall be released to complete the balance on probation

_____ Said sentence to be served on **work release**

_____ Said sentence may be served on **weekends**

_____ Interpreter fees $ _____ DISMISSED Restitution $ per City Court Cost $_____

_____ Other: _____

_____ Said sentence is commuted to time served

_____ ALL OF SAID SENTENCE TO BE SERVED ON PROBATION

## CONDITIONS OF PROBATION

The Defendant having been granted the privilege of serving all or part of the above stated sentence on probation, is hereby sentenced to the following conditions;

1. Pay a monthly probation supervision fee of $45.00 per month and a one time file setup fee of $9.00.
2. Pay a monthly crime victims compensation program fee of $9.00.
3. Pay all fines within _____ months at a rate of _____.00 per month.
4. Do not violate the laws of any governmental unit.
5. Report to your probation supervisor as directed and permit such supervisor to visit him/her at home or elsewhere.
6. Work faithfully at suitable employment insofar as may be possible.
7. Do not change present address, move outside the jurisdiction of the Court, or leave the State without permission of the probation supervisor.
8. Support your legal dependants to the best of your ability.
9. Avoid injurious and vicious habits.
10. Upon request of probation officer, produce or submit to a breath, urine and or blood specimen for analysis for the possible presence of any substance prohibited or controlled by any law at a rate payable to the probation department of 15.00 per screen.
11. Successfully complete _____ hours of community service at a non-profit organization.
12. Complete a DUI Risk Reduction Course and/or Drug Risk Reduction Course.
13. Other: _____

Defendant was represented by the Michael Lambros Attorney

IT IS FUTHER ORDERED OF THE COURT and the Defendant is hereby advised that the Court may, at any time, revoke any conditions of this probation and or discharge the Defendant from probation. The Probationer shall be subject to arrest for violation of any condition herein imposed. If such probation is revoked, the Court may order the execution of the balance of the sentence which was originally imposed or any portion thereof in the manner provided by law. Probation may be terminated upon completion of all conditions of probation.

**IT IS ORDERED.**

10/12/2025 3/4/26 _____
DATE

_____
JUDGE, MUNICIPAL COURT OF FOREST PARK

### ACKNOWLEDGEMENT OF SERVICE

This is to certify that a true and correct copy of this sentence has been delivered in person to the Defendant/Probationer who acknowledges service and acknowledges that he/she was instructed regarding the conditions set forth.

| _____ | _____ | _____ |
|---|---|---|
| DATE | PROBATIONER | PROBATION OFFICER |

# EXHIBIT K



**Chief Brandon Criss**
Police Services
320 Cash Memorial Blvd.
Forest Park, GA 30297

## CITY OF
## FORESTPARK

Date: 12/30/25

To: Jason Cantrell
Re: Request for Sound Amplification Permit

Dear Mr. Jason Cantrell,

Your request to utilize sound-amplifying devices at 519 Forest Parkway, Forest Park, Ga, 30297 has been approved. The date granted is 01/07/2026-04/07/2026, during the event as freedom of speech during the hours of 8:00am-5:00pm. As a reminder, this permit to utilize sound amplifying device will be limited to the regulations outlines in the City Ordinance. You have been informed of the City Ordinances that are attached with this approval and that the sound amplification device must not be used to create disturbance to the peace, health, or safety of others or endanger their comfort within the city limits.

This is just the notice of approval, please come by 785 Forest Parkway, Forest Park, GA 30297 to retrieve requested Sound Amplifying Permit.

Chief Brandon Criss

CITY HALL • 745 FOREST PARKWAY, FOREST PARK, GA 30297
WWW.FORESTPARKGA.ORG



**Chief Brandon Criss**
Police Services
320 Cash Memorial Blvd.
Forest Park, GA 30297

CITY OF
**FOREST PARK**

Date: _10-1-2025_

To: Jason Cantrell,
Re: Request for Sound Amplification Permit

Dear Jason Cantrell,

Your request to utilize sound-amplifying devices at 519 Forest Pkwy, Forest Park, Ga, 30297 has been approved. The dates granted are October 6, 2025- January 6, 2026, Monday- Saturday, during the event for community awareness, freedom of speech during the hours of 8am-5pm. As a reminder, this permit to utilize sound amplifying device will be limited to the regulations outlines in the City Ordinance. You have been informed of the City Ordinances that are attached with this approval and that the sound amplification device must not be used to create disturbance to the peace, health, or safety of others or endanger their comfort within the city limits.

This is just the notice of approval, please come by 785 Forest Parkway, Forest Park, GA 30297 to retrieve requested Sound Amplifying Permit.

Chief Brandon Criss

CITY HALL • 745 FOREST PARKWAY, FOREST PARK, GA 30297
WWW.FORESTPARKGA.ORG

# EXHIBIT L

# SOUND AMPLIFYING DEVICE PERMIT



**Issued To: Jason Cantrell**

**Issued Date: 12/30/2025**

**Location: 519 Forest Parkway, Forest Park, Ga, 30297**

**Date: 01/07/2026 - 04/07/2026**

**Time: 08:00am-05:00pm**

If complaints are received about noise level, this Permit will become null and Void.

_____
Kandice Gardner,
Financial Service Tech

_____12/30/25_____
Date

# SOUND AMPLIFYING DEVICE PERMIT



**Issued To: Jason Cantrell**

**Issued Date: 10/02/2025**

**Location: 519 Forest Parkway, Forest Park, Ga, 30297**

**Date: 10/06/2025 - 01/06/2026**

**Time: 08:00am-05:00pm**

If complaints are received about noise level, this Permit will become null and Void.

*Kandice Gardner*
_____

Kandice Gardner,
Financial Service Tech

OCT 0 2 2025
_____

Date