# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| JASON CANTRELL,<br><br>Plaintiff,<br><br>vs.<br><br>KANDICE GARDNER, individually and in her official capacity;<br>ANDRE PITTS, individually and in his official capacity;<br>JAMAL HUNTER, individually and in his official capacity; and<br>THE CITY OF FOREST PARK,<br><br>Defendants. | CIV. ACTION NO. 1:26-CV-01638<br><br>The Honorable Eleanor L. Ross<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANTS' MOTION TO DISMISS
## AND SUPPORTING MEMORANDUM OF LAW

COME NOW Defendants Kandice Gardner ("Gardner"), Andre Pitts ("Officer Pitts"), Jamal Hunter ("Officer Hunter"), and the City of Forest Park ("City" or "Forest Park") (*collectively*, "Defendants") and move to dismiss the above-captioned complaint pursuant to, *inter alia*, Federal Rule of Civil Procedure ("Federal Rule") 12.  Although the City has repeatedly granted Plaintiff Jason Cantrell's ("Plaintiff" or "Cantrell") requests for use of amplification devices to engage in First Amendment activities at a healthcare facility in Forest Park, when

Page 1 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

law enforcement simply requested that Plaintiff lower the volume consistent with City's codified significant/compelling interest/goal in public health, safety, and welfare, Plaintiff refused before increasing the volume when law enforcement were leaving the scene.  Nevertheless, the City has continued to permit First Amendment activities outside of the subject healthcare facility.  Indeed, the City's actions speak volumes as to the respect and compliance with the First Amendment's protections. Despite Plaintiff's mistaken belief, this case does not involve a Heckler's Veto and is a far cry from a curtailment of First Amendment rights.  Specifically, the Court should dismiss the above-captioned complaint because, *inter alia*, (1) Defendants are entitled to Qualified and Official Immunity for the individual capacity claims; (2) the official capacity claims are unnecessary and redundant because the City has been directly sued; (3) Plaintiff has not alleged the unlawful deprivation of protected speech rights (the City engaged in lawful content-neutral regulation); (4) the neutral and general regulation of noise does not deprive Plaintiff of First Amendment Free Exercise rights; and (5) the Court should decline to exercise jurisdiction over the equally defective State law claim.  For the reasons fully articulated herein (and in response to Plaintiff's motion for injunctive relief), Defendants respectfully request, pursuant to Federal Rule 12, that the Court grant the instant motion, dismiss the

Page 2 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

above-captioned complaint, as well as grant any other relief the Court deems appropriate.

## I.  BACKGROUND

*Liberally construing* the above-captioned complaint, Plaintiff alleges that Cantrell is a pro-life advocate and minister.  (Doc. no. 1, Compl. ¶ 15).  Plaintiff contends that, consistent with the City's Code of Ordinances ("City Code"), Cantrell received a permit to utilize a sound amplification device, containing a provision nullifying and voiding said permit based upon noise complaints, for purposes of evangelizing against abortions at A Preferred Women's Health Center ("Health Center") located at 519 Forest Parkway, Forest Park, Georgia.  (Id. ¶¶ 24-31).  Plaintiff complains that, while utilizing a sound amplification device at the Health Center on July 31, 2025, Cantrell received a citation for violating the City Code after law enforcement requested that Plaintiff reduce the volume of the device following public complaint(s).  (Id. ¶¶ 32-43).  Plaintiff maintains that, after a legal challenge, the City dismissed the citation.  (Id. ¶¶ 45-50).  Plaintiff submits that, although permitting the use of sound amplification devices at the Health Center, the City has directed Cantrell to lower the volume, chilling First Amendment rights.  (Id. ¶¶ 51-60).  From these general allegations, Plaintiff asserts deprivation of speech pursuant to 42 U.S.C. § 1983, deprivation of free exercise of religion pursuant to Section

Page 3 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

1983, deprivation of speech pursuant to the Georgia Constitution, and violation of the Georgia Religious Freedom Restoration Act ("RFRA") claims.  (Id. ¶¶ 61-96).

## II.  ARGUMENT AND CITATION TO AUTHORITY

### A.    Standard of Review

Under the Federal Rules, a complaint may be dismissed if it fails to state a claim.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S. Ct. 1937 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2006)).  In this regard, all factual allegations "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto."  GSW, Inc. v. Long Cnty., 999 F.2d 1508, 1510 (11th Cir. 1993).  However, conclusory allegations or legal conclusions "are not entitled to the assumption of truth"—labels and conclusions, formulaic recitations of elements, or naked assertions are insufficient to state a claim.  Ashcroft, 566 U.S. at 664-78.  Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level."  Twombly, 550 U.S. at 570.  Determining whether a complaint states a plausible claim for relief is a context-specific task, requiring the Court to draw on its judicial experience and common sense.  Ashcroft, 556 U.S. 663-64.

Page 4 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

**B.      The City Officials Are Entitled to Qualified and Official Immunities**

Despite complaining about the City's purported conduct *vis-à-vis* permitting of sound amplification devices and enforcement of the City Code, Plaintiff has failed to identify controlling authority putting officials on notice that the subject conduct violated constitutional rights.   Qualified Immunity shields officials acting within discretional authority from liability when conduct does not violate a clearly established right—***it is particularly difficult to overcome immunity in the First Amendment context***.  Echols v. Lawton, 913 F.3d 1313, 1319 (11th Cir. 2019); see also Maxwell v. Buford City Sch. Dist., No. 122CV03978MHCWEJ, 2023 WL 10511871, at *5 (N.D. Ga. Feb. 1, 2023), *report and recommendation adopted*, No. 1:22-CV-3978-MHC-WEJ, 2023 WL 10511866 (N.D. Ga. Apr. 25, 2023) (explaining that, because First Amendment authority has not staked out bright line rules, defendants are rarely on notice of unlawful actions).   Likewise, official immunity flowing from the Georgia Constitution shields public officials from suit in personal capacities for performing discretionary duties in the absence of "actual malice" or "actual intent to cause injury."  Cameron v. Lang, 274 Ga. 122, 123–26, 549 S.E.2d 341 (2001); Gates v. Khokhar, 884 F.3d 1290, 1304–05 (11th Cir. 2018).

First, the individual Defendants are entitled to Qualified Immunity. Constitutional rights are clearly established only if its contours are sufficiently clear

Page 5 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

that a reasonable official would understand that the conduct violated said right. Duke v. Hamil, 997 F. Supp. 2d 1291, 1303 (N.D. Ga. 2014) (concluding that, even if there were a First Amendment violation, the defendant would still be entitled to Qualified Immunity in the absence of a clear knowing of a constitutional violation). Here, Plaintiff has failed to identify controlling authority that would have put the individual Defendants on notice that, in light of the noise and permitting ordinances, the subject conduct violated constitutional rights. As such, Defendants are entitled to Qualified Immunity. See Tisdale v. Gravitt, 51 F. Supp. 3d 1378, 1393 (N.D. Ga. 2014) (concluding that, even if a restriction on recording was a blanket ban, the restriction was content-neutral and the plaintiff failed to identify controlling authority and, thus, qualified immunity prevailed).

Likewise, the individual Defendants are entitled to Official Immunity. Actual malice is a demanding standard (even reckless illegal conduct does not support an inference of actual malice), requiring allegations that the officials acted with a deliberate intention to engage in wrongful conduct. Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016). The above-captioned complaint is devoid of such allegations. Moreover, nothing in the pleadings suggests that the individual Defendants acted with an intent to injure. Indeed, Plaintiff alleges that the City has repeatedly issued permits and that Gardner performed duties by issuing permits in

Page 6 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

accordance with the City Code.  Even when engaging Plaintiff concerning the noise ordinance, law enforcement did not detain or arrest Plaintiff and the citation was ultimately dismissed.  Simply put, even if the Court were inclined to believe that the decision-making was misguided or reckless, nothing in the above-captioned complaint overcomes Official Immunity.  <u>Watkins v. Davis</u>, 696 F. Supp. 3d 1276, 1308–09 (N.D. Ga. 2023), *affirmed*, 156 F.4th 1084 (11th Cir. 2025).

## C.      The Official Capacity Claims Are Redundant and Superfluous

Likewise, Plaintiff's claims against the individual Defendants in their official capacities should be summarily dismissed.  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all aspects other than name, to be treated as a suit against the entity."  <u>Lavassani v. Canton, Ga.</u>, 760 F. Supp. 2d 1346, 1357 (N.D. Ga. 2010).  Here, despite naming the City as a Defendant, Plaintiff has also sued all the individual Defendants in both their individual and official capacities for the same events and claims.[1]  (Doc. no. 1, Compl., ¶¶ 16-18).  However, the City has received notice and appeared to defend the claims asserted in this matter.  Ultimately, because Plaintiff named the real-party-

---

[1] When determining whether officials are sued individually or officially (or both), courts look to the proceedings to determine the nature of sought-after liability.  <u>Jackson v. Ga. Dep't of Transp.</u>, 16 F.3d 1573, 1576 (11th Cir. 1994).

Page 7 of 26
<u>Cantrell v. City of Forest Park</u>, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

in-interest (City), it is unnecessary to sue the individuals Defendants in their official capacities.[2]  Therefore, the Court should dismiss the official capacity claims against the individual Defendants.

## D.      Defendants Have Not Deprived Plaintiff of Speech Rights

Turning to the merits of the above-captioned complaint, Plaintiff alleges that, by enforcing complaint restrictions with no objective standard, Defendants deprived the freedom of speech pursuant to Section 1983 and the Georgia Constitution.[3]  (Doc. no 1, Compl. ¶¶ 61-79, 90-93).   Without question, both the United States and Georgia Constitutions protect free speech.  U.S. Const. Amend. I; Ga. Const. Art. I, § 1, ¶ V.  To state a deprivation claim, plaintiffs must establish that the City deprived Cantrell of a secured right under color of law.  Richardson v. Johnson, 598 F.3d 734,

---

[2] Local governments cannot be held liable on a *respondeat superior* theory pursuant to Section 1983 in the absence of the execution of municipal custom/policy.  Griffin v. Opa-Locka, 261 F.3d 1295, 1307 (11th Cir. 2001), *cert. denied*, 535 U.S. 1033 (2002).  Plaintiffs seeking to impose liability on a municipality under Section 1983 must identify the policy or custom (officially adopted) causing the deprivation.  Davis v. DeKalb Cnty. Sch. Dist., 233 F.3 1367, 1375 (11th Cir. 2000), cert. denied, 532 U.S. 1066 (2001).  Where a plaintiff claims the municipality has caused an employee to inflict injury, rigorous standards of culpability and causation must be applied.  Canton, Ohio v. Harris, 489 U.S. 378, 391-92, 109 S.Ct. 1197 (1989).

[3] To prevail under Section 1983, a plaintiff must show deprivation of a Federal right by a person acting under color of State law.  Griffin, 261 F.3d at 1303.  Persons act under State law when acting with authority possessed by virtue of employment by the State.  Id.  Section 1983 requires an affirmative causal connection between the defendant's act(s)/omission(s) and the alleged constitutional deprivation.  Zatler v. Wainwright, 803 F.2d 397, 401 (11th Cir. 1986).  With these principles in mind, the critical inquiry is whether Plaintiff has stated an actionable deprivation.

Page 8 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

737 (11th Cir. 2010). Ultimately, when addressing free speech claims under the United States and Georgia Constitutions, this Court applies the same analysis.[4] Alves v. Bd. of Regents of the Univ. Sys. of Georgia, No. 112CV01899JOFGGB, 2014 WL 11279526, at *13 (N.D. Ga. Jan. 6, 2014), *report and recommendation adopted*, No. 1:12-CV-01899-WCO, 2014 WL 11279462 (N.D. Ga. Aug. 22, 2014), *affirmed*, 804 F.3d 1149 (11th Cir. 2015); Smith v. Atlanta Indep. Sch. Dist., 633 F. Supp. 2d 1364, 1375 (N.D. Ga. 2009).

## 1. This Case Does Not Involve a Heckler's Veto

Throughout the above-captioned complaint, Plaintiff mischaracterizes this matter as a Heckler's Veto. In this regard, speech cannot be punished or banned simply because it might offend a hostile mob. Forsyth Cnty., Ga. v. Nationalist Movement, 505 U.S. 123, 134–35, 112 S. Ct. 2395 (1992); see also Burk v. Augusta-Richmond Cnty., 365 F.3d 1247, 1258 (11th Cir. 2004) (explaining that the denial of speech because the audience will riot constitutes an impermissible Heckler's Veto). However, a Heckler's Veto occurs when unpopular speakers are convicted upon evidence showing no more than peaceably expressed opinions were opposed

---

[4] To bring First Amendment claim, plaintiffs cannot proceed directly under the First Amendment, but rather, must assert claims through Section 1983. Almand v. DeKalb Cnty., 103 F.3d 1510, 1512-13 (11th Cir. 1997).

Page 9 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

to the views of the community to attract a crowd and necessitate police protection—the Heckler's Veto principle prohibits police from arresting peaceful protesters, or ordering them to disperse, in acquiescence to unruly counter protesters. Jackson v. Cowan, No. 19-13181, 2022 WL 3973705, at \*8 (11th Cir. Sept. 1, 2022) (*per curiam*). Nothing in the above-captioned complaint suggests that law enforcement ordered Plaintiff (or any other persons) to disperse. Indeed, Plaintiff alleges no counter-protest to Plaintiff's First Amendment activities. Rather, Plaintiff asserts that, when law enforcement engaged Cantrell concerning the volume of the sound amplification device, law enforcement issued a citation, which the City dismissed. Likewise, Plaintiff does not contend that Cantrell was arrested in response to the public's reaction to unpopular speech. Put simply, this is not a Heckler's Veto case.

### 2. The City Engaged in Lawful Content-Neutral Regulation

Putting aside the mischaracterization of this matter, Beasley v. Atlanta, No. 1:11-CV-03801-AJB, 2012 WL 13012623 (N.D. Ga. Aug. 30, 2012) is instructive concerning motions to dismiss involving deprivation claims. After suspending enforcement of the city's park closure law in light of the Occupy Atlanta protests based upon a compelling public safety need, the mayor revoked the executive order because individuals failed to adhere to safety laws/directives, ultimately resulting in the arrest of protestors for violating the closure law. Id. at \*\*3-4. Addressing the

Page 10 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

deprivation claim, this Court explained that, to bring the constitutional claims, plaintiffs must establish the deprivation of a secured right under the color of law. Id. at *6. Because there was no question of whether the city was acting under the color of state law, this Court turned its attention to whether there was a deprivation of any speech rights. Id. Because the park was a traditional public forum, this Court explained that a time, place, and manner restriction can be enforced only if it is content neutral, narrowly tailored to achieve a significant government interest, and leaves open alternative channels of communication. Id. at **10-11. Because the law prohibited all activity during a certain period without regard to content, the regulation was content-neutral. Id. at **11-12. Likewise, this Court concluded that, because the interest in maintenance, noise reduction, safety, and crime reduction are significant government interests, and the law only prohibited access for seven hours per day without limiting expressive activity outside the parks, the regulation was narrowly tailored. Id. at **12-15. Finally, because the protesters could still utilize public sidewalks during the period when the parks were closed, there were ample alternative channels for communication. Id. at **15-16. As such, the city's regulation was constitutional and the claim was dismissed. Id. at. 16.

Based upon the pending motion for preliminary injunction, Defendants anticipate Plaintiff will argue that the *alleged* content-based restriction in this matter

Page 11 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

involves a "public forum" that fails to comport with "strict scrutiny."  In a traditional public forum which grants general access to the designated class, like a sidewalk, governments may impose reasonable time, place, and manner restrictions on private speech, but content-based restrictions must satisfy strict scrutiny, and those based on viewpoint are prohibited.  Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc., 942 F.3d 1215, 1236–37 (11th Cir. 2019).  Reasonable content-neutral restrictions on the time, place, or manner of speech are constitutional if the regulations are justified without reference to the content of the speech, are narrowly tailored to serve a significant government interest, and leave alternative channels open for the communication of information, *i.e.*, intermediate scrutiny.  Lexra, Inc. v. Deerfield Beach, Fla., 593 Fed. Appx. 860, 864 (11th Cir. 2014).  Conversely, content-based regulations fall under strict scrutiny, requiring the government to establish that the restriction is narrowly tailored to achieve a compelling interest.  One World One Fam. Now v. Miami Beach, 175 F.3d 1282, 1286 (11th Cir. 1999).

To determine whether a regulation passes First Amendment scrutiny, the Court must first decide whether said regulation is content-neutral or content-based. In this regard, Plaintiff maintains the mistaken Heckler's Veto argument and further contends that the provision of the permit concerning complaints transforms the City's classic time, place, and manner regulation into a content-based restriction in

Page 12 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

the absence of a volume/decibel measure.  Although noise regulations based on decibel limitations might be more precise, such objective limitations are not necessary to comport with the First Amendment.  Sharkey's, Inc. v. Waukesha, 265 F. Supp. 2d 984, 995 (E.D. Wis. 2003).  Moreover, as in this case when sound amplification restrictions apply during certain periods to all devices and locations regardless of the message/speech, there is no differential treatment based on content.  Harbourside Place, LLC v. Jupiter, Fla., 958 F.3d 1308, 1317 (11th Cir. 2020); see also Turner Broad. Sys., Inc. v. F.C.C., 512 U.S. 622, 639, 114 S. Ct. 2445 (1994) (explaining that the physical characteristics of a transmission should be ignored when determining the constitutionality of regulations affecting speech).  Simply put, as the City merely sought to regulate the noise/volume without regard to the message or nature of the speech, strict scrutiny is inapplicable.

Because the challenged regulation is content-neutral, this matter is governed by intermediate scrutiny.  In this regard, the regulation must be narrowly tailored to further a substantial governmental interest unrelated to the suppression of speech.  Computer & Commc'ns Indus. Ass'n v. Uthmeier, No. 25-11881, 2025 WL 3458571, at *5 (11th Cir. Nov. 25, 2025).  Without question, the City's regulation comports with intermediate scrutiny.

Page 13 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

DA Mortg., Inc. v. Miami Beach, 486 F.3d 1254 (11th Cir. 2007) is instructive concerning whether noise regulations run afoul of intermediate scrutiny in First Amendment cases. In DA Mortg., the club owner and sublessor challenged the county noise ordinance, which prohibited, *inter alia*, operation of sound devices at a "louder volume than is necessary for convenient hearing," enforced by the city after being cited for "excessive noise." Id. at 1258, 1263-64. Addressing whether the noise regulation was a permissible time, place, and manner restriction, the Eleventh Circuit explained that governments have a substantial interest in protecting citizens from unwelcome noise and that governments may act to protect traditional public fora such as streets from excessive noise. Id. at 1267. Concerning tailoring, governments need not show that the regulation uses the least-restrictive means of achieving the government interest if the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation. Id. Because the code addressed, *inter alia*, excessive noise from devices that reproduce sounds, it proscribed unreasonably loud noise in terms that addressed the needs and welfare of all listeners. Id. at 1267-68. As such, the regulation was narrowly tailored. Id. at 1268. Addressing the alternative channels prong, the Eleventh Circuit explained that, because the regulation did not impose a total ban, but rather only restricted the volume so as not to intrude on the peace and quiet of

Page 14 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

the community, the regulation conformed to the First Amendment.  Id. at 1268-69; see also Pine v. W. Palm Beach, FL, 762 F.3d 1262, 1272–74 (11th Cir. 2014) (affirming denial of motion for preliminary injunction barring enforcement of noise ordinance banning amplified noises near health care clinics).

Here, the City's regulation is equally constitutional.  Akin to DA Mortg., the City sought to regulate excessive noise from amplification devices to address the health and welfare of citizens in the public forum.  And, because the City has not sought to impose a total ban, but merely limit the volume to avoid intrusions on the peace and tranquility of the public, the City has not run afoul of the First Amendment.  Again, as alleged in the above-captioned complaint, the City has repeatedly and continuously permitted Plaintiff to utilize amplification devices at the Health Center.  Ultimately, the City has not prevented or limited Plaintiff's ability to engage in First Amendment activities, but rather, simply regulated the excessive volume of Plaintiff's speech for the safety, health, and general welfare citizens.  As alleged in the above-captioned complaint, the City's regulation leaves open ample alternative channels of communication in the form of speech without use of an amplification device and/or signage.  The City has not prevented Plaintiff from First Amendment activities.

Page 15 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

*Presumably*, Plaintiff will cite, like when moving for an preliminary injunction, Ward v. Rock Against Racism, 491 U.S. 781, 109 S. Ct. 2746 (1989) for the proposition that the City has failed to satisfy intermediate scrutiny. However, even where the standards are flexible and officials can exercise considerable discretion, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." Id. at 795. Although retaining ultimate control, the city deferred to the sponsor's desires concerning sound quality and excessive noise. Id. Finally, because cities can protect public fora and there is a substantial interest in protecting citizens from unwelcome noise, where the city merely seeks to control volume without interfering with the speech, the regulation is narrowly tailored. Id. at 796-802. Again, although Plaintiff *apparently* desires perfect clarity/guidance concerning enforcement of the City Code, the First Amendment does not impose that requirement. Sharkey's, Inc., 265 F. Supp. 2d at 995. And, because the regulation arose from public noise and not content, Ward supports the conclusion that the City has not violated the First Amendment.

Even if the Court determines that strict scrutiny applies (Defendants make no such admission), the City still has not deprived Plaintiff's free speech rights. To survive strict scrutiny, the regulation must be narrowly tailored to serve a compelling government interest. Reno v. Flores, 507 U.S. 292, 302, 113 S. Ct. 1439 (1993).

Page 16 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

Although likely conceding that the City has a compelling interest in public peace, preventing unreasonable noise, and minimizing disruption in public spaces, Plaintiff will likely argue that the *purported* complaint-based mechanism is not narrowly tailored.   But, narrow tailoring requires employment of the least restrictive alternative to further the interest.  In re Georgia Senate Bill 202, 622 F. Supp. 3d 1312, 1333 (N.D. Ga. 2022).  Although demanding, strict scrutiny is possible to satisfy—narrow tailoring is not synonymous with "perfect" tailoring and, thus, courts often consider whether the law is overinclusive, whether the law is underinclusive, and the availability of less restrictive alternatives.  VoteAmerica v. Raffensperger, 800 F. Supp. 3d 1349, 1372 (N.D. Ga. 2025).

Here, the challenged noise regulation does not encompass more protected speech than necessary to achieve the goals/interests of public safety, health, and welfare, the prevention of unreasonable noise, and minimization of disruptions in public spaces.  First, neither the City Code nor the permit sweeps too broadly, fringing further on First Amendment rights than is necessary to advance the compelling interest.  Indeed, as the City addresses concerns regarding volume/noise without banning First Amendment expression (Plaintiff's speech was not prohibited), the challenged regulation is not overinclusive.  Second, although the City is not required to address all problems in a single regulation in furtherance of

Page 17 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

health, safety, and welfare, the City has not left other similar conduct that also threatens the health and general welfare unregulated. Like noise, the City regulates signage to protect and promote the health, safety, and welfare of the City while requiring permits. City Code §§ 8-3-2(1) and 8-3-6. Third, the City cannot employ less restrictive alternatives that would be at least as effective in achieving the legitimate purpose of safety and general welfare. Although a decibel restriction may be more precise, restrictiveness and effectiveness would then depend on the chosen decibel limitation. Indeed, a very low limit might restrict substantially more expression than required to serve the City's interests without considering the circumstances—noise that might be tolerable at some times and in some locations might not be at other times and places. Moreover, individuals could easily escape such regulations by simply lowering the volume in the presence of law enforcement and resuming disruptive activities outside the presence of law enforcement. Ultimately, the City is objectively regulating noise while permitting exceptions to the extent there is no public disturbance. Therefore, the Court should dismiss the speech deprivation claims.

## E.    Defendants Have Not Deprived Plaintiff of Free Exercise Rights

Next, Plaintiff alleges that, by enforcing complaint restrictions with no objective standard, Defendants deprived the free exercise of religion rights pursuant

Page 18 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

to Section 1983.  (Doc. no. 1, Compl. ¶¶ 80-89).  However, the First Amendment provides that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof.  U.S. Const. Amend. I.  In this regard, the Free Exercise Clause is applicable to the States through the Due Process Clause of the Fourteenth Amendment.  Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900 (1940).  To that end, the protections afforded by the Free Exercise Clause prevent governments from discriminating against the exercise of religious beliefs or conduct motivated by religious beliefs.  Church of the Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 532, 113 S.Ct. 2217 (1993).  Generally, a plaintiff states a First Amendment Free Exercise Clause claim by demonstrating that the government has impermissibly burdened a sincerely held religious belief.[5]  GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1256 (11th Cir. 2012), *abrogated in part on other grounds by* New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 142 S. Ct. 2111 (2022);  Kramer v. Conway, 962 F. Supp. 2d 1333, 1345 (N.D. Ga. 2013).

Whitaker v. Perdue, No. 4:06-CV-0140-CC, 2007 WL 10025445 (N.D. Ga. Mar. 30, 2007), *on reconsideration in part*, No. 4:06-CV-0140-CC, 2008 WL

---

[5] The Constitution does not forbid all constraints on religiously motivated conduct, but rather, the First Amendment is implicated when a law/regulation imposes a substantial, as opposed to inconsequential, burden on the litigant's religious practice.  Levitan v. Ashcroft, 281 F.3d 1313, 1320 (D.C. Cir. 2002).

Page 19 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

11627774 (N.D. Ga. Sept. 30, 2008) is instructive concerning Free Exercise claims in the face of governmental regulation. Faced with the State law prohibiting registered sex-offenders from within 1,000 feet of certain facilities, schools, churches, and areas where minors congregate, the plaintiffs sued, arguing that the law would force registered offenders from homes, jobs, and churches and that the plaintiff would be prohibited from assisting offenders who would be forced from a faith-based halfway house. Id. at **1-3. Addressing the Free Exercise claim, this Court explained,

> The Free Exercise Clause protects both religious beliefs and religious practices. Generally, a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice. As to the neutrality requirement, at a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons. Although a law targeting religious beliefs as such is never permissible, if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral.

Id. at *15 (internal quotations and citations omitted). Laws lack facial neutrality when referring to religious practice without a secular meaning discernable from the language or text. Id. Because the law did not refer to a religious practice, it satisfied the neutrality requirement. Id. As to the generality prong, where a law has the incidental effect of burdening religious practice, categories of selection are of

Page 20 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

paramount concern. Id. Despite the proximity requirement, the law did not impose a substantial burden on religious practices because the law did not forbid offenders from residing in halfway houses or preclude the plaintiff from providing spiritual leadership/assistance. Id. Although the portion of the law related to proximity to churches would effectively prohibit registered offenders from serving as clergy, the claim based upon residing within 1,000 feet of a church was dismissed. Id.; see also Vazzo v. Tampa, No. 8:17-CV-2896-T-02AAS, 2019 WL 1048294, at *12 (M.D. Fla. Jan. 30, 2019), *report and recommendation adopted sub nom.* Vazzo v. Tampa, Fla., No. 8:17-CV-2896-T-02AAS, 2019 WL 1040855 (M.D. Fla. Mar. 5, 2019) (concluding that city ordinance prohibiting providers from practicing conversion therapy on minors did not violate the Free Exercise Clause).

Like Whitaker, Plaintiff cannot establish a violation of the Free Exercise Clause. As discussed, the City has merely sought to regulate noise in the interest/goal of public health, safety, and welfare. Plaintiff has failed to (and cannot) allege that the subject regulation referred to a religious practice. Neutrality is satisfied. Likewise, nothing in the above-captioned complaint suggests that the City has prevented Plaintiff from engaging in First Amendment activities at the Health Center. Indeed, the regulation applies uniformly to all citizens/residents and

Page 21 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

Plaintiff has failed to allege selective enforcement targeted at religious conduct. Therefore, Plaintiff's Free Exercise claim fails as a matter of law.

## F.   Plaintiff Has Failed to Allege Recoverable Injuries

Putting aside the lack of actionable deprivation, Plaintiff has failed to plead recoverable damages. Rather, Plaintiff complains that, based upon the challenged regulation, Cantrell experienced significant distress, reputational harm, the expenditure of unspecified time/resources, and unspecified "constitutional injuries." (Doc. no. 1, Compl. ¶¶ 49-50). However, compensatory damages under Section 1983 may be awarded only based upon actual injuries, which cannot be presumed or based upon the abstract value of purportedly violated constitutional rights. Carey v. Piphus, 435 U.S. 247, 264, 98 S.Ct. 1042 (1978); Slicker v. Jackson, 215 F.3d 1225, 1229 (11th Cir. 2000). Indeed, the amorphous, imprecise, and vague references to distress, reputational harm, and damage to constitutional rights are not recoverable through compensatory damages under Section 1983. Unlike Tuggle v. Hill, No. 1:06-CV-272-ODE, 2009 WL 10688077 (N.D. Ga. May 4, 2009) where the plaintiff suffered increased blood pressure and document medical treatment, was arrested, and lost business related to the prosecution news reports, Plaintiff has merely referenced purported abstract constitutional violations, not any actual injuries. In

Page 22 of 26
Cantrell v. City of Forest Park, et al., Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

the absence of actual, concrete damages allegations, the request for compensatory damages is defective.

**G.    The Court Should Not Exercise Jurisdiction Over the GRFRA Claim**

Finally, Plaintiff alleges that the subject conduct constitutes a violation of Georgia's Religious Freedom Restoration Act ("GRFRA"). (Doc. no. 1, Compl., ¶¶ 94-96). For the reasons stated, *supra*, Plaintiff's GRFRA fails as a matter of law. See O.C.G.A. § 50-15A-1 (providing that the government shall not substantially burden the exercise of religion even if the burden results from a rule of general applicability, except where the burden furthers a compelling governmental interest and is the least restrictive means for furthering said interest). Putting aside the failure to state a claim under the GRFRA, in cases where original jurisdiction exists, district courts may have supplemental jurisdiction over all other claims so related to the claims triggering original jurisdiction. 28 U.S.C. § 1367. However, when the Federal law claims have dropped out of the lawsuit and only State law claims remain, district courts should decline to exercise jurisdiction. 6420 Roswell Rd., Inc. v. Sandy Springs, Georgia, 484 F. Supp. 3d 1321, 1343 (N.D. Ga. 2020). Even though the GRFRA is based on the Federal structure, this Court should choose not to make determinations on the new State law before Georgia courts interpret it. Smith v. Augusta-Richmond Cnty., Georgia, No. CV 122-149, 2026 WL 675326, at *4 (S.D.

Page 23 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

Ga. Mar. 10, 2026).  Therefore, the Court should decline to exercise jurisdiction over the State law claim.

### III.  CONCLUSION

When all is said and done, Plaintiff has alleged that the City merely seeks to protect public health, safety, and welfare while permitting citizens to engage in First Amendment activities.  Indeed, the continued permitting of sound amplification devices at the Health Center speaks volumes of the City's desire and effort to balance First Amendment concerns against the legitimate, significant, and compelling interest in public health, safety, and welfare which are at a premium outside of healthcare facilities.  For the reasons stated, *supra*, Defendants respectfully request that, pursuant to Federal Rule 12, the Court grant the instant motion, dismiss the above-captioned complaint, and close this matter.[6]

*[SIGNATURE ON THE FOLLOWING PAGE]*

---

[6] Under the Federal Rules, defendants are entitled to challenge the pleadings and such a motion must be made before serving an answer. Gore v. Jacobs Eng'g Grp., No. 113CV02547MHSGGB, 2014 WL 12775320, at *1 (N.D. Ga. Feb. 10, 2014).  In this regard, "a timely filed motion to dismiss tolls the responsive pleading deadline until the motion is decided, at which time a new responsive pleading deadline is imposed." Gordon v. CSS Serv. Inc., No. 1:23-CV-5400-SCJ-CCB, 2025 WL 2743677, at *4 (N.D. Ga. June 26, 2025), *report and recommendation adopted*, No. 1:23-CV-5400-SCJ, 2025 WL 2743671 (N.D. Ga. July 29, 2025).  Should the Court deny the instant motion, Defendants are prepared to file an answer within 14 days after notice of the Court's order pursuant to Federal Rule 12(a)(4).

Page 24 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

Respectfully submitted, this 21st day of April, 2026.

DENMARK ASHBY MATRICARDI LLC

_____

DANIELLE M. MATRICARDI
Georgia Bar No. 259551
CHANDARALEN PHE
Georgia Bar No. 686706
T. ORLANDO PEARSON
Georgia Bar No. 180406
100 Hartsfield Center Parkway, Suite 400
Atlanta, Georgia 30354
Phone:  (770) 478-9950
Email:  dmatricardi@dam.law
Email:  cphe@dam.law
Email:  tpearson@dam.law

*Counsel for Defendants Kandice Gardner, Andre Pitts, Jamal Hunter, and The City of Forest Park*

Page 25 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JASON CANTRELL,<br><br>Plaintiff,<br><br>vs.<br><br>KANDICE GARDNER, individually and in her official capacity;<br>ANDRE PITTS, individually and in his official capacity;<br>JAMAL HUNTER, individually and in his official capacity; and<br>THE CITY OF FOREST PARK,<br><br>Defendants. | CIV. ACTION NO. 1:26-CV-01638<br><br>The Honorable Eleanor L. Ross<br><br>**JURY TRIAL DEMANDED** |

**LOCAL RULE CERTIFICATION**

The undersigned certifies that this document has been prepared in accordance with Local Rule 5.1 and that the ***Motion to Dismiss and Supporting Memorandum of Law*** has been filed using the CM/ECF system, which will notify the attorney(s) of record.

Respectfully submitted, this 21st day of April, 2026.

DENMARK ASHBY MATRICARDI LLC

T. ORLANDO PEARSON
Georgia Bar No. 180406

Page 26 of 26
Cantrell v. City of Forest Park, *et al.*, Civ. Action No. 1:26-cv-01638
Defendants' Motion to Dismiss and Supporting Memorandum of Law