**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **JASON CANTRELL,**<br>*Plaintiff,*<br>*v.*<br>**KANDICE GARDNER,**<br>**ANDRE PITTS,**<br>**JAMAL HUNTER,*** and<br>**THE CITY OF FOREST PARK,**<br>*Defendants.* | **Civil Action No. 1:26-cv-01638-ELR**<br><br>The Hon. Eleanor L. Ross |

**PLAINTIFF JASON CANTRELL'S MOTION FOR ATTORNEY'S FEES**

Plaintiff Jason Cantrell, by counsel, pursuant to 42 U.S.C. § 1988(b), Fed. R. Civ. P. 54(d)(2), and Local Rule 54.2, hereby moves this Court for an award of attorney's fees in the above-styled action. The requested fees are attributable to hours spent preparing, filing, and litigating this matter. For the reasons set forth below, Plaintiff's motion should be granted, and the City should be ordered to pay $96,180 in attorney's fees and $605 in costs.

## STATEMENT OF FACTS

The City of Forest Park conditioned the continued validity of sound-amplification permits on listener reaction. Its permits expressly stated that they became "null and Void" if "complaints are received about noise level," allowing

*Individual Defendants Gardner, Pitts, and Hunter were dismissed from this action by order of the Court on October 8, 2026. *See* Doc. no. 32, Order at Sec. II.

any dissatisfied listener's complaint to trigger revocation of an otherwise valid permit. *See* Doc. no. 1, Verified Complaint ¶¶ 1, 4 (defining the "Complaint Restriction"). In other words, a complaint alone resulted in a permit's revocation, regardless of whether the noise level actually exceeded *any* objective standard. Jason Cantrell held such a permit and used it to preach the Gospel at A Preferred Women's Health Center, an abortion clinic in Forest Park. *Id*. ¶¶ 2, 24. On July 31, 2025, Forest Park police told Mr. Cantrell that they had received complaints and that his permit would be revoked unless he lowered the volume. *Id*. ¶¶ 34–39. Mr. Cantrell complied, but officers, without measuring the sound, nevertheless cited him and told him that the permit had been revoked. *Id*. ¶¶ 32, 39–42, 70.

Mr. Cantrell contested the citation, filed pleadings, waited months, and appeared in Forest Park Municipal Court prepared for trial. The City dismissed the charge on the morning of trial, so no court adjudicated his constitutional arguments. *Id*. ¶¶ 44–49. The Complaint Restriction nevertheless remained in effect, and officers continued to tell him that complaints had been received and that his permit could be revoked. *Id*. ¶¶ 51–52. That continuing threat chilled his speech: he repeatedly lowered the amplifier to satisfy officers who used no objective measurement and anonymous complainants whose objections could have concerned either his volume or his message. *Id*. ¶¶ 52–55, 67. Because a single complaint could again trigger revocation and months of litigation, Mr. Cantrell could not determine in advance what volume the City would permit.

On March 26, 2026, Mr. Cantrell filed this action under 42 U.S.C. § 1983. *Id*. He alleged that the Complaint Restriction and the City's practice of putting it on permits violated the First and Fourteenth Amendments. He sought a declaratory judgment, a preliminary and permanent injunction against the restriction and any substantially similar provision that lets third-party complaints or listener sensitivity control permit validity, and fees under 42 U.S.C. § 1988. The same day, he moved for a preliminary injunction. *See* Doc. no. 2, Motion for Preliminary Injunction.

The City opposed the injunction on April 17, 2026, and moved to dismiss on April 21, 2026. *See* Doc. no. 20; Doc. no. 23. On April 23, 2026, the parties stipulated that the City would issue Mr. Cantrell a new permit for 519 Forest Parkway, for at least ninety days, without the Complaint Restriction or any equivalent complaint-based revocation term. *See* Doc. no. 24, Joint Stipulation. That protection would remain throughout the pendency of litigation, resolving Mr. Cantrell's request for preliminary relief. *Id*. For that reason, Mr. Cantrell withdrew the preliminary-injunction motion. *Id*. On April 29, 2026, the Court stayed the case for settlement negotiations. *See* Doc. no. 26, Order.

The parties agreed to a Consent Judgment, and they jointly moved for its entry on October 2, 2026. *See* Doc. no. 30, Joint Motion for Entry of Consent Judgment. The Court entered the Judgment on October 8, 2026. *See* Doc. no. 32, Order on Motion for Judgment. The Judgment permanently enjoins the City, its

officers, agents, employees, and persons acting in active concert with them from including on any permit issued under the City Code the restriction "If complaints are received about noise level, this Permit will become null and Void," or any substantially similar term permitting automatic revocation of a Sound Amplifying Device Permit based solely on a third-party complaint. *Id*. It dismisses the individual defendants with prejudice and retains jurisdiction to enforce the ongoing Judgment and decide this fee request. *Id*. Section VI reserves prevailing-party status and the amount of any fee for this Court. *Id*.

## ATTORNEY FEE AWARD STANDARD

A prevailing party in an action under 42 U.S.C. § 1983 may recover "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). A plaintiff prevails when he obtains a judicially sanctioned material alteration of the legal relationship of the parties, including an enforceable judgment on the merits or a court-ordered consent decree. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603–04 (2001); *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–93 (1989). In the Eleventh Circuit, a consent decree or judgment that a court enters and retains jurisdiction to enforce effects that alteration. *Am. Disability Ass'n v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002); *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 907 (11th Cir. 2003). An admission of liability is not required. *Maher v. Gagne*, 448 U.S. 122, 126 n.8 (1980).

Once that threshold is met, fees should be awarded absent special circumstances. *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Reasonable hours multiplied by a reasonable hourly rate in the relevant market give the court a lodestar amount that is presumed reasonable. *Hensley*, 461 U.S. at 433; *Perdue v. Kenny A.*, 559 U.S. 542, 551–52 (2010); *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988).

## ARGUMENT

### I. Plaintiff is the Prevailing Party.

Plaintiff is the "prevailing party" under 42 U.S.C. § 1988 because the Consent Judgment materially altered the parties' legal relationship through judicially enforceable relief. Under the Supreme Court's latest statement of the test, a party "prevails" when a court "conclusively" resolves his claim by granting enduring relief on the merits that alters the legal relationship between the parties. *Lackey v. Stinnie*, 604 U.S. 192, 202 (2025). The Supreme Court specifically held that "[t]he availability of fees following the entry of a court-ordered consent decree is fully consistent with the rule" it announced, because it "conclusively resolves the claim, bears a judicial *imprimatur*, and may grant enduring relief that materially alters the legal relationship between the parties." *Id.* at 207. *See also Buckhannon*, 532 U.S. at 604 ("[S]ettlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees.").

That standard is satisfied by a court-entered consent judgment, even without an admission of liability. *Maher v. Gagne*, 448 U.S. 122 (1980), is conclusive on the point. There, as here, the plaintiff brought a Section 1983 action, the parties resolved the case through a court-entered consent decree that did not admit liability, and the question of fees remained for the court. *Id.* at 126 & n.8. The Supreme Court rejected any contention that the consent decree furnished insufficient relief, deferring to the district court's determination that the plaintiff had obtained substantially the relief sought. *Id.* at 126–27, 129–30. Under *Maher*, the absence of an explicit admission of liability or adjudication on the merits does not merely fail to rebut prevailing-party status; it is legally irrelevant. *See also Chmielarz*, 289 F.3d at 1320; *Smalbein*, 353 F.3d at 905–07. This case, therefore, is squarely governed by *Lackey* and *Maher*; the Consent Judgment supplies the central prospective relief requested in the Complaint, is enforceable by this Court, and leaves only the fee determination unresolved.

A comparison of the Complaint's Prayer for Relief with the Consent Judgment confirms that the Judgment grants the central injunctive relief Plaintiff requested. The Complaint asked the Court to "Preliminarily and Permanently Enjoin Defendants from enforcing the Complaint Restriction, revoking permits on that basis, or threatening such revocation." Doc. no. 1, Prayer for Relief. The Consent Judgment, in turn, permanently enjoins the City and those acting with it from including in any permit the precise Complaint Restriction "If complaints are

received about noise level, this Permit will become null and Void"—or "any substantially similar terms, language, or conditions" permitting automatic revocation of a sound-amplification permit based solely on a third-party complaint. Doc. no. 32, Order. The Judgment thus converts the Complaint's requested prohibition on enforcing the Complaint Restriction and revoking permits on that basis into a binding, judicially enforced, prospective prohibition against placing that restriction—or its substantial equivalent—on any permit. The Judgment permanently eliminates the very condition the City had enforced against Mr. Cantrell and prevents the City from recreating the same complaint-triggered revocation mechanism under different language.

Neither the parties' recitals nor the City's pre-judgment conduct nor the lack of a judgment on the case's merits diminish Plaintiff's status as the prevailing party. *Buckhannon* holds that a voluntary change is insufficient to support a fee award, but it does not hold that a later court-entered injunction becomes legally insignificant because the defendant also changed its practices. 532 U.S. at 604. As the Eleventh Circuit has made explicit, a consent judgment is properly the basis for fees. *Chmielarz*, 289 F.3d at 1320; *Smalbein*, 353 F.3d at 905–07. The Supreme Court explained in *Texas State Teachers Association* that the only relevant question is whether the plaintiff obtained enforceable relief, materially altering the parties' relationship, not whether he prevailed on each and every claim. *See Tex. State Teachers Ass'n*, 489 U.S. at 791–93. The answer here is yes. The City's denial of

liability is an ordinary consent-judgment provision for which *Maher* already accounts. 448 U.S. at 129 ("The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees.").

## II. The Lodestar is the Reasonable Fee.

Plaintiff requests the lodestar: the hours reasonably expended on the litigation multiplied by reasonable hourly rates. *Hensley*, 461 U.S. at 433. The resulting amount is presumptively reasonable, and a departure requires specific evidence. *Perdue*, 559 U.S. at 552–53; *Norman*, 836 F.2d at 1299. "Although [the *Johnson*] balancing test has since been displaced by the lodestar formula," the Eleventh Circuit has expressed "approval of district courts considering the *Johnson* factors in establishing a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 n.6 (11th Cir. 1994) (discussing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). Those remaining factors—the novelty and difficulty of First Amendment constitutional questions, the skill required to develop a record supporting immediate relief and then convert it into judicially enforceable relief, the experience and reputation of the attorneys, and the nature of the relief obtained—are reflected in and support the requested rates. *See Johnson*, 488 F.2d at 717–19. In reviewing the request, the Court need not achieve auditing perfection but instead aims to do "rough justice." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

A. <u>The rates requested are reasonable Atlanta market rates.</u>

A reasonable rate is the prevailing market rate: what lawyers of comparable skill and experience can reasonably expect to command in the venue. *Blum v. Stenson*, 465 U.S. 886, 895–96 (1984); *Norman*, 836 F.2d at 1299. The venue is the "place where the case is filed"—Atlanta, Georgia. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quoting *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)). The Court may look to counsel's submissions, awards in analogous cases, and its own knowledge of the market. Section 1988 places nonprofit public-interest counsel on equal footing with private counsel by valuing their services at prevailing market rates, rather than by reference to the organization's cost of providing them. *Blum*, 465 U.S. at 895; *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989).

Plaintiff seeks hourly rates of $750 for Andrew J. Ekonomou, $500 each for Liam Harrell and Nathan Moelker, and $150 for Tracy Turner. As detailed in Andrew Ekonomou's Declaration, Ekonomou has been a member of the Georgia bar for fifty-two years, is a former acting United States Attorney for this District, and has served as counsel for the American Center for Law and Justice ("ACLJ") in this District. Ekonomou has substantial First Amendment litigation experience, including serving as counsel of record for the prevailing parties in the landmark First Amendment decision in *Bd. of Airport Comm'rs of L.A. v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987).

As detailed in their respective declarations, Liam Harrell and Nathan Moelker have experience litigating First Amendment and religious-liberty matters for the ACLJ. Harrell has been a practicing attorney for five years, and Moelker for four years. Tracy Turner performed necessary paralegal support work.

In *Stimson v. Stryker Sales Corp.*, 2022 U.S. Dist. LEXIS 22588 (N.D. Ga. Feb. 8, 2022), a court in this District approved hourly rates of $780 for a senior partner in a sanctions fee case, noting that they were "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (quoting *Yule v. Jones*, 766 F. Supp. 2d 1333, 1343 (N.D. Ga. 2010)). *See also Zediker v. OrthoGeorgia*, 857 F. App'x 600, 609–10 (11th Cir. 2021) (finding $750 a reasonable Atlanta rate for lead counsel in an FCA case). In *Miller v. Coventry Holding Group, Inc.*, 2025 U.S. Dist. LEXIS 64537 (N.D. Ga. Apr. 3, 2025), the Court approved $600 per hour for experienced employment counsel who had requested $750, noting that the rate reflected the attorneys' qualifications and the prevailing Atlanta market. *See also Brooks v. Carr Protective Serv., Inc.*, 2024 U.S. Dist. LEXIS 157022 (N.D. Ga. Feb. 21, 2024) ($500/hour awarded); *Faulk v. Dimerco Express USA Corp.*, 2024 U.S. Dist. LEXIS 149190 (N.D. Ga. July 10, 2024) ($550/hour awarded to a partner); and *Jordan v. City of Atlanta*, 2022 U.S. Dist. LEXIS 252559 (N.D. Ga. Aug. 12, 2022) ($475/hour awarded).

In *Goldring v. Henry*, 2022 U.S. Dist. LEXIS 133775 (N.D. Ga. July 22, 2022), a Section 1983 malicious-prosecution case, the Court approved a fee award based on

$500 hourly rates for counsel; the defendants did not contend those rates were unreasonable. Other recent awards in this District for partners in civil-rights and employment matters have ranged from $450 to $650 per hour, with paralegal rates of $150 per hour routinely approved. *Kincaid v. Pasha Atlanta, LLC*, 2025 U.S. Dist. LEXIS 145609 (N.D. Ga. July 30, 2025) (approving $150 for an experienced paralegal).

The declarations of these attorneys identify these comparable cases, describe the experience and role of the attorneys who received the cited rates, and explain why the work and market conditions here are comparable. As the time records attached to the Declaration show, Ekonomou expended 13.5 hours (a subtotal of $10,125), Moelker expended 75.6 hours (a subtotal of $37,800), Harrell expended 90.9 hours (a subtotal of $45,450), and Turner expended 18.7 hours (a subtotal of $2,805). The lodestar is $96,780.

B. <u>The hours submitted were reasonably expended.</u>

The hours were spent on the work this case required, and each category was necessary to reach the Judgment. Counsel investigated the permit, the July 31, 2025, citation, and the City's sound-amplification practice and met with Mr. Cantrell to establish the facts later verified in the Complaint. They researched the First Amendment limits on listener-triggered permit revocation and drafted the Verified Complaint and the preliminary-injunction motion. They reviewed the City's opposition and motion to dismiss, advised the client about both, and

prepared the required response. After the City agreed to issue a permit without the Complaint Restriction, counsel reviewed the April 23, 2026, stipulation, withdrew the injunction motion, and negotiated the Consent Judgment, including the injunction language and the reservation of this fee request. Counsel also devoted time to client meetings, the status reports the Court required during the stay, and this petition. The records itemize that work. All of it formed part of this litigation, rather than a severable category the Court should exclude. *Hensley*, 461 U.S. at 434.

No filing in this case was duplicative. The post-filing work was similarly necessary, as it was directed toward the result obtained. The stipulation secured immediate protection while the case remained pending, but it did not furnish permanent relief. Counsel therefore had to negotiate the duration and scope of the interim protection, assess the City's proposed Code and permit changes, draft and revise language broad enough to prevent reintroduction of the same restriction in different words, address dismissal of the individual defendants, preserve the fee issue, and ensure that the Court retained jurisdiction to enforce the final Judgment. Time reasonably spent preparing the fee motion and supporting declarations is also compensable because § 1988 would be undermined if the cost of establishing the statutory fee were excluded from the award. *Johnson v. University College of University of Alabama*, 706 F.2d 1205, 1207 (11th Cir. 1983).

An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation. *Id.* at 1208 ("The use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work."); *ACLU of Ga.*, 168 F.3d at 432. That standard is met here. Should the City challenge any of Plaintiff's Counsel's particular entries, it must identify them with sufficient precision to permit a reasoned ruling. *Id.* at 428. There is nothing inherently unreasonable about a client having multiple attorneys. *Norman*, 836 F.2d at 1302. The Court may reduce specific excessive, redundant, or inadequately documented time, but it should not impose an across-the-board reduction based on generalized disagreement with the staffing or the ultimate settlement posture. In any case, a plaintiff who obtains excellent results is entitled to a fully compensatory fee, and the award is not reduced merely because he did not prevail on every contention. *Hensley*, 461 U.S. at 435.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court order Defendant City of Forest Park to pay $96,180 in attorney's fees and $605 in costs.

Respectfully submitted this twenty-eighth day of October 2026.

*/s/ Andrew J. Ekonomou*
Andrew J. Ekonomou
Georgia Bar No. 242750
AMERICAN CENTER FOR LAW & JUSTICE
3286 Northside Parkway
Suite 1007
Atlanta, Georgia 30327
aekonomou@outlook.com

*/s/ Liam R. Harrell*
Liam R. Harrell*
D.C. Bar No. 1740309
Nathan J. Moelker*
Va. Bar No. 98313
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
(202) 546-8890 (phone)
(202) 546-9309 (fax)
lharrell@aclj.org
nmoelker@aclj.org
* Admitted *pro hac vice*

**CERTIFICATE OF COMPLIANCE**

Undersigned counsel certifies, per Local Rule 7.1(D), that this filing complies with Local Rule 5.1. The filing is fourteen pages long, double-spaced, and was prepared using Microsoft Word in Book Antiqua thirteen-point font.

/s/ *Liam R. Harrell*
Liam R. Harrell
*Counsel for Plaintiff*